# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                          NEWS RELEASE #015

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **15th day of March, 2016**, are as follows:

**BY WEIMER, J.**:

2015-CJ-1812        TRACIE F. v. FRANCISCO D. (Parish of Jefferson)

Accordingly, while we disagree with the appellate court's reasoning, we affirm the appellate court's decision to reinstate the child's maternal grandmother as the domiciliary parent in a joint custody arrangement with the child's biological father. AFFIRMED.

KNOLL, J., concurs in the result for the reasons assigned by Crichton, J.
HUGHES, J., dissents with reasons.
CRICHTON, J., concurs in the result and assigns reasons.

**03/15/16**

# SUPREME COURT OF LOUISIANA

## NO. 2015-CJ-1812

## TRACIE F.

## VERSUS

## FRANCISCO D.

*ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIFTH CIRCUIT, PARISH OF JEFFERSON*

**WEIMER**, Justice.

This matter involves a custody contest between the biological father and the maternal grandmother, who was designated as the domiciliary parent in a consent decree.[1] Because of conflicting analysis of this issue by the courts of appeal, we granted a writ to determine the standard for adjudicating a request for increased custodial rights brought by a biological parent who shares joint custody with a grandparent, and the biological parent has earlier stipulated that the grandparent should be designated as having the rights and responsibilities of a domiciliary parent.

Grappling with whether a child should be moved from what is oftentimes perceived as the stable and long-standing environment provided by a non-parent who has been awarded custody as a domiciliary parent, the appellate courts have developed different approaches for evaluating the request of a biological parent to be awarded

---

[1] Although the underlying reasons are unclear from the record before us, in this opinion, we adhere to the appellate court's efforts to keep the identity of the litigants and the minor child confidential.

domiciliary parent status. For example, some courts–like the appellate court in this case–have placed the burden of proof on the biological parent to show "rehabilitation" to be presently fit to be the domiciliary parent and to show that the environment provided by the person currently serving as the domiciliary parent has "materially changed." Another appellate court has instead placed the burden of proof on the domiciliary parent (who is a non-biological parent) to show that substantial harm to the child will result if domiciliary status is awarded to a biological parent.

For the reasons discussed in this opinion, we are especially guided by La. C.C. art. 131 and the legislative comments to its revision, and we hold that the overarching inquiry in an action to change custody is "the best interest of the child." Moreover, consistent with our prior jurisprudence regarding stipulated custody awards, we further hold that a biological parent with joint custody, who seeks modification of a stipulated custody award to obtain greater custodial rights, must prove: 1) there has been a material change in circumstances after the original custody award; and 2) the proposed modification is in the best interest of the child. <u>See</u> **Evans v. Lungrin**, 97-0541, 97-0577, p. 13 (La. 2/6/98), 708 So.2d 731, 738; *cf.* **Bergeron v. Bergeron**, 492 So.2d 1193 (La. 1986).

Applying this standard, we find that the biological father satisfied the first element of proof. Specifically, the significantly increased involvement-albeit recent-by the biological father in the life of his child, coupled with the child embracing this new parent-child relationship, satisfies the first element. However, we find that the biological father failed to prove that a modification from the long-standing and stable environment the child has experienced while domiciled in the home of the child's grandparent would be in the child's best interest. Although our reasoning differs, we

2

ultimately affirm the decision of the appellate court, maintaining the joint custody arrangement with the grandparent as the domiciliary parent.

## FACTUAL and PROCEDURAL BACKGROUND

On May 29, 2006, D. was born to Tracie F., who was unmarried. Tracie indicated that D.'s father was Francisco D.[2] Tracie and Francisco met shortly before Hurricane Katrina. They never lived together, nor did they have a committed relationship. After Tracie informed Francisco that she was pregnant, Francisco, who was in his early 30s, asked her to terminate the pregnancy.

Several months after D.'s birth, Tracie filed a petition for sole custody or, alternatively, for joint custody with Francisco but with Tracie being named as the domiciliary parent. On January 7, 2007, by stipulated judgment, the court awarded joint custody, designating Tracie as the domiciliary parent. Francisco was granted reasonable visitation and was ordered to pay $400 per month as child support and to maintain health insurance on the child.

---

[2] Noting that the mother was never married to Francisco, we are unable to presume Francisco's paternity on the basis of a marriage. See La. C.C. art. 186. However, "the provisions on custody incident to divorce" apply to children of unmarried parents when a child has been "formally acknowledged by both parents." La. C.C. art. 245. In the record before us, we find circumstantial evidence of Francisco's acknowledgment, inasmuch as the parties do not dispute that the child has Francisco's surname, and there is unrefuted testimony that Francisco was present at the child's birth in a Louisiana hospital. These circumstances point to Francisco having formally acknowledged the child on the registered Louisiana birth certificate, which is expressly contemplated as a formal acknowledgment of paternity pursuant to La. C.C. art. 196. As for an acknowledgment of maternity, under La. C.C. art. 184, maternity "may be established by a preponderance of the evidence that the child was born of a particular woman," and 2005 Revision Comment (a) to La. C.C. art. 184 indicates acknowledgment of maternity is an even less formal matter than acknowledgment of paternity because "maternity may be proved by any evidence at any time." We find Tracie's unrefuted testimony satisfies the standard of La. C.C. art. 184 to establish maternity. Thus, on the particular facts of this case, we are persuaded that Francisco has a right of action to seek modification of a custody award and that we are applying the correct body of law, namely "the provisions on custody incident to divorce" as dictated by La. C.C. art. 245, when a child of unmarried parents has been formally acknowledged by the parents. We note, however, that La. C.C. art. 245 has been "suppress[ed]" and deleted by 2015 La. Acts 260 (effective January 1, 2016). While not addressing the "suppression" of Article 245, the parties have maintained that their substantive rights are governed under the law in effect at the time of the district court's decision. We likewise apply the law in effect prior to January 1, 2016. See La. C.C. art. 6 ("In the absence of contrary legislative expression, substantive laws apply prospectively only.").

By all accounts, including his own stipulation, Francisco had little involvement in D.'s upbringing for approximately the first seven years of D.'s life. During that timeframe, Francisco seldom exercised his visitation rights and took virtually no role in D.'s education. Tracie also proved to be less than a model parent. When D. was still an infant, Tracie deferred numerous responsibilities to her mother, Kathy B., and stepfather, Michael B. Indeed, Tracie and D. moved into Kathy and Michael's house when D. was approximately six months old. This living arrangement proved to be a long-standing one. As D. grew beyond infancy, so, too, did Kathy and Michael's role. Kathy and Michael enrolled D. in a private school, and Kathy paid the tuition. Michael coached D.'s baseball team. Kathy and Michael nurtured D.'s religious upbringing and promoted his participation in cub scouts.

Meanwhile, although the record is unclear as to whether Francisco met all of his child support obligations, the record establishes that whatever payments Francisco made, Tracie did not turn over any portion to Kathy and Michael. Along with many of the logistics of raising D., Kathy and Michael bore the bulk of the financial responsibilities.

In early 2013, Kathy became especially alarmed about Tracie's behavior, including her supervision of D. Through counsel, Kathy contacted Francisco to apprise him of her concerns. Kathy's counsel informed Francisco that Tracie was embroiled in a physically abusive relationship with her boyfriend and had begun abusing drugs and prescription medication. Kathy proposed that D. be removed from Tracie's custody. Francisco agreed and, on May 28, 2013, he joined Kathy in a pleading styled as a "Petition to Change Custody to Non-Parent and Petition of Intervention for Custody of Minor Child." Concurrently with the joint petition, a proposed order was submitted granting Kathy temporary custody with a rule to show

cause why Francisco should not be relieved of child support obligations "with the change in custody to Kathy." The district court issued the temporary custody order.

In Kathy and Francisco's petition, Tracie was named as a defendant. Ultimately, however, on July 18, 2013, all three parties consented to a judgment by which D. was permanently removed from Tracie's custody and joint custody was awarded to Kathy and Francisco. By the same stipulated judgment, Kathy was designated as the domiciliary parent.[3] There was no requirement in the stipulated judgment for Francisco to pay child support.

Less than a year later, on March 24, 2014, Francisco filed a petition to annul the stipulated judgment. Alternatively, Francisco requested a "Rule to Change Custody, Set Visitation, and Other Relief." Francisco alleged that the judgment of joint custody "was obtained by fraud or ill practices" and should, therefore, be annulled. Francisco elaborated: "the maternal grandmother 'lured' the child's father into joining her Petition by promises of accommodation and increased time he would now have with his son." Francisco complained that Kathy allowed him insufficient visitation. His prayer for relief included an award of sole custody with "reasonable and supervised visitation" allowed to Tracie. Francisco also sought to preclude Kathy from having any visitation

---

[3] Pursuant to La. R.S. 9:335(B), designation as a domiciliary parent has the following significance:

> (2) The domiciliary parent is the parent with whom the child shall primarily reside, but the other parent shall have physical custody during time periods that assure that the child has frequent and continuing contact with both parents.

> (3) The domiciliary parent shall have authority to make all decisions affecting the child unless an implementation order provides otherwise. All major decisions made by the domiciliary parent concerning the child shall be subject to review by the court upon motion of the other parent. It shall be presumed that all major decisions made by the domiciliary parent are in the best interest of the child.

rights unless the court determined that allowing Kathy visitation was in the best interest of the child.

Francisco later abandoned his contention that the stipulated judgment was procured by fraud or ill practices. On August 7, 2014, Francisco, through new counsel, filed an "Amended Rule to Change Custody, Set Visitation and Other Relief and Memorandum of Law to Exception of No Cause of Action." Francisco's pleading was prefaced with the statement that "circumstances have changed to such a material extent and degree affecting the welfare of the child to warrant a modification of custody." Francisco alleged Kathy "has not and does not exchange any information with [Francisco] about any aspect of the minor child's health, education and his welfare." He contended that "[t]he minor child has expressed a strong preference to primarily live with his father and step-mother, as he should and because a parent has paramount parental right over a non-parent." His request for sole custody was reiterated.

Francisco's rule to change custody was referred to a hearing officer. The hearing officer refused Francisco's request, citing the fact that there was a stipulated judgment assigning custody and finding "[n]o circumstances have changed since then." The hearing officer also explained that removing D. from his long-standing home was "such a profound step" that to do so would "require[] a trial before the district judge." Accordingly, Francisco's request to change custody was set for trial.

Both Kathy and Francisco filed pretrial memoranda. Each argued that the other party had the burden of proof relative to Francisco's request for a change in custody. There is no indication in the record that the district court decided in advance of the trial which party would have the burden of proof. A remark by Francisco's counsel

6

during the trial shows, instead, that the question of who carried the burden was indeed still unresolved.

As will be further discussed, both parties presented evidence of their current and extensive involvement in D.'s life and upbringing, with Francisco acknowledging that he became actively involved in D.'s life only within the past year. At the conclusion of trial, the district court awarded sole custody to Francisco. In written reasons, the court indicated that Kathy had the burden of proof at trial, but failed to meet her burden, as follows:

> [Kathy] failed to meet her burden of proving the father having custody of the minor child would result in substantial harm to the minor child. See La. C.C. Art. 133. To the contrary, the evidence adduced at trial proved that custody to the child's biological father would provide the child with a wholesome, stable, above adequate, loving and structured environment to allow the minor child to thrive. See generally, La. C.C. Art. 131, et seq. This Court appreciates the non-considered nature of the July 18, 2013 Consent Judgment and recognizes the parent's paramount right to custody of his child. See La. C.C. Art. 133.

Kathy appealed. In a split decision, the appellate court, by vote of 3 to 2, determined that Francisco had the burden of proof to show "rehabilit[ation]" to be presently fit to be a domiciliary parent and to show that the environment provided by Kathy as the current domiciliary parent had "materially changed." **Tracie F. v. Francisco D.**, 15-224 (La.App. 5 Cir. 9/21/15), 174 So.3d 781. Therefore, the appellate court's majority reinstated the "stipulated judgment awarding joint custody to Kathy and Francisco, with Kathy designated as the domiciliary parent." ***Id.***, 15-224 at 54, 174 So.3d at 813. Francisco sought review by this court. We granted a writ. **Tracie F. v. Francisco D.**, 15-1812 (La. 11/16/15), ___So.3d___. Although our reasoning differs greatly from that of the appellate court's majority, we ultimately affirm its decision.

7

## LAW and ANALYSIS

**A. The Standard for Modifying a Stipulated Judgment Award of Joint Custody and Domicilary Parent Status to a Non-Parent**

Mindful of this court's civilian mandate, our analysis begins with the applicable statutory law. The Civil Code provides that for "a proceeding in which custody of an illegitimate child formally acknowledged by both parents is sought by both parents, and in proceedings for change of custody after an original award, custody shall be awarded in accordance with the provisions on custody incident to divorce contained in Title V of this Book." La. C.C. art. 245. In turn, the first of the codal divorce custody provisions directs that "[i]n a proceeding for divorce or thereafter, the court shall award custody of a child in accordance with the best interest of the child." La. C.C. art. 131.

> Our application of statutory law is guided by the following principles:
>
> The fundamental question in all cases involving statutory interpretation is legislative intent. **City of DeQuincy v. Henry**, 2010-0070 (La. 3/15/11), 62 So.3d 43, 46. Further, according to the general rules of statutory interpretation, our interpretation of any statutory provision begins with the language of the statute itself. **In re Succession of Faget**, 10-0188, p. 8 (La. 11/30/10), 53 So.3d 414, 420. While the Official Revision Comments are not the law, they may be helpful in determining legislative intent. See, e.g., **State v. Jones**, 351 So.2d 1194, 1195 (La. 1977).

**Arabie v. CITGO Petroleum Corp.**, 10-2605, pp. 4-5 (La. 3/13/12), 89 So.3d 307, 312. Indeed, the legislative comments to La. C.C. art. 131 are greatly instructive for this case. According to 1993 Revision Comment (a), "the best interest of the child [is] the overriding test to be applied in all child custody determinations. The primacy of that test has been statutorily mandated in Louisiana since 1979 (C.C. Arts. 134, 131(A) (1992); Acts 1979, No. 718), and the best interest principle itself has been jurisprudentially and legislatively recognized at least since 1921." (Emphasis added.)

9

Leaving no room for doubt that the best interest of the child is the test for "all child custody determinations," (La. C.C. art. 131, 1993 Revision Comment (a)), a later comment to Article 131 stresses that "[t]his Article should be followed in actions to change custody as well as in those to initially set it." La. C.C. art. 131, 1993 Revision Comment(d) (emphasis added). Similarly, the comments to La. C.C. art. 134, which lists factors for determining the best interest of the child, indicates: "Article [134] should be followed in actions to change custody, as well as in those to fix it initially." La. C.C. art. 134, 1993 Revision Comment (d) (emphasis added).[4]

Relying on these comments, this court stated that "[t]he primary consideration in a determination of child custody is the best interest of the child. This applies not only in actions setting custody initially, but also in actions to change custody." **Mulkey v. Mulkey**, 12-2709, pp. 9-10 (La. 5/7/13), 118 So.3d 357, 364 (citing **Gray v. Gray**, 11-548, p. 19 (La. 7/1/11), 65 So.3d 1247, 1258, which cited La. C.C. art. 131, 1993 Revision Comment (d)) (footnotes omitted).[5] See also **AEB v. JBE**, 99-2668, p. 7 (La. 11/30/99), 752 So.2d 756, 760-61. Comment (d) to article 131 states that the article should be followed in actions to change custody as well as in those to initially set it.").

This court has also recognized a distinction between two types of custody awards. One type of custody award is a "considered decree," which "is an award of permanent custody in which the trial court receives evidence of parental fitness to

---

[4] The revision comments are included in the legislative instrument promulgating the current version of La. C.C. arts. 131 and 134. See 1993 La. Acts 261, § 1, effective January 1, 1994.

[5] For thoroughness as the author of this opinion, I note at this juncture that I dissented in **Mulkey**. However, my dissent was based on my belief that the "majority focuse[d] on the manifest error rule while not adequately considering" other "requirements, which were adopted to limit custody contests on grounds that are less than imperative." **Mulkey**, 12-2709 at 4, 118 So.3d at 370 (Weimer, J., dissenting). I did not dissent from the principles for which **Mulkey** is cited in this opinion.

exercise care, custody, and control of children." **Mulkey**, 12-2709 at 10, 118 So.3d at 364. A second type of custody award has been referred to as a "stipulated judgment," which a court renders "when the parties consent to a custodial arrangement, and no evidence of parental fitness is taken." **Evans**, 97-0541 at 13, 708 So.2d at 738.

This court has recognized that different burdens of proof apply to each of the two types of custody awards. "[T]he jurisprudential requirements of **Bergeron v. Bergeron** ... are applied to actions to change custody rendered in considered decrees." **AEB**, 99-2668 at 7, 752 So.2d at 761. That is, "the proponent of change must show that a change of circumstances materially affecting the welfare of the child has occurred since the prior order respecting custody." **AEB**, 99-2668 at 7, 752 So.2d at 761 (citing **Bergeron**, 492 So.2d at 1195). Additionally, for considered decrees, "[t]he party seeking a change 'bears the heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child.'" **AEB**, 99-2668 at 7, 752 So.2d at 761 (quoting **Bergeron**, 492 So.2d at 1200).

In contrast to considered decrees, "where the original custody decree is a *stipulated judgment*, the party seeking modification must prove (1) that there has been a material change of circumstances since the original custody decree was entered, and (2) that the proposed modification is in the best interest of the child." **Evans**, 97-0541 at 13 708 So.2d at 738.[6]

---

[6] We note that the terms "consent judgment," "consent agreement," or "consent decrees" are sometimes used synonymously with "stipulated judgment," as the record in this case demonstrates. This opinion uses

In the instant case, the appellate court chose neither of these standards. Even though there was a stipulated judgment, the appellate court imposed a greater burden on Francisco than the burden of showing a material change of circumstances and the best interest of the child, the standard articulated in **Evans** for modifying a stipulated judgment. Instead, the appellate court adopted a standard applied by another appellate court. "After thoroughly analyzing the cases which have addressed the standard of proof in this instance, we agree with the Louisiana Second Circuit in its **Jones v. Coleman** analysis." **Tracie F.**, 15-224 at 51, 174 So.3d at 812 (citing **Jones v. Coleman**, 44,543 (La.App. 2 Cir. 7/15/09), 18 So.3d 153).

In **Jones**, "youthful, unmarried parents relinquished custody of the child to the maternal grandparents shortly after the child's birth." **Id.**, 44,543 at 2, 18 So.3d at 155. The parents formalized this arrangement when they agreed to a stipulated judgment, which granted sole custody to the grandparents and allowed the parents "reasonable visitation." **Id.**, 44,543 at 2, 18 So.3d at 156. Approximately four years later, the father sought to change custody with an award of "primary custody" for himself and of "reasonable visitation" for the grandparents. **Id.**, 44,543 at 3, 18 So.3d at 156. The district court agreed with the father that he "got his life together much better now" and that was "enough to say that there has been a change of facts." **Id.**, 44,543 at 6, 18 So.3d at 158. But, the district court explained that "the big burden is that the proposed modification is in the best interest of the child." **Id.** The court then concluded that the child was doing well where he was–living with the grandparents. Therefore, the district court denied the father's request for sole custody. **Id.**

these terms interchangeably in order to best fit the context of the discussion.

The father appealed; the **Jones** court affirmed, articulating a different burden of proof than that described by the district court. Because the father had previously consented to the grandparents having custody, the **Jones** court observed that the father acknowledged his "unfitness … [as a] parent and the fitness of the nonparent[s] to provide an adequate and stable environment." *Id.*, 44,543 at 18, 18 So.3d at 164, citing La. C.C. art. 133, which provides for custody to a non-parent, as follows:

> If an award of joint custody or of sole custody to either parent would result in substantial harm to the child, the court shall award custody to another person with whom the child has been living in a wholesome and stable environment, or otherwise to any other person able to provide an adequate and stable environment.

To overcome the perceived dual admissions of the father's own unfitness and the fitness of the grandparents, the **Jones** court ruled that the following two burdens of proof applied:

> First, the parent must demonstrate his rehabilitation which eliminates the "substantial harm" threat to the child which existed at the time of the initial judgment. Second, the parent must establish that the adequate and stable environment in which the child was placed with the nonparent as a result of the initial adjudication has materially changed.

**Jones**, 44,543 at 18-19, 18 So.3d at 164. In the instant case, the appellate court recognized that the burden it was adopting from **Jones** was higher than the burden imposed in other circuits. See **Tracie F.**, 15-224 at 29-35 & 51, 174 So.3d at 799-803 & 812. By way of contrast, the appellate court cited **Dalme v. Dalme**, 09-524, p. 3 (La.App. 3 Cir. 10/14/09), 21 So.3d 477, 479-80. In **Dalme**, the court articulated this burden:

> It is significant that there have been two custody decrees on this matter and that both of them have been consented to by [the father]. This court has noted that such agreements may only be modified when there is a showing that there has been a material change in circumstances and that the modification would be in the best interest of the minor child.

See <u>Tracie F.</u>, 15-224 at 34, 174 So.3d at 802 (quoting **Dalme**, 09-524 at 3, 21 So.3d at 479-80).[7] The appellate court in the instant case, however, like the court in **Jones** accepted the rationale that "an initial consent judgment under Article 133, awarding joint custody to a parent and nonparent with the nonparent being domiciliary, is a determination of the unfitness of the parent and the fitness of the nonparent to provide an adequate and stable environment for the child." **Tracie F.**, 15-224 at 52, 174 So.3d at 812.

Respectfully, we conclude the appellate court erred in choosing the standard it did, for several reasons. First and foremost, the express legislative guidance points away from such a standard. Rather than basing a standard on La. C.C. art. 133, the standard should be based on La. C.C. art. 131, as the legislative comments to Article 131 indicate: "[t]his Article should be followed in actions to change custody as well as in those to initially set it." La. C.C. art. 131, 1993 Revision Comment (d). <u>See also</u> La. C.C. art. 134, 1993 Revision Comment (d). Second, the heightened standard articulated by the appellate court thwarts–rather than promotes–the best interest of the child. Recalling that "the best interest of the child [is] the overriding test to be applied in all child custody determinations" (La. C.C. art. 131, 1993 Revision Comment (c)), under the standard articulated by the court below, custody is immutable if a biological parent has wisely consented to the child's custody in a stable environment that remains stable. This is truly an instance where an exception swallows the rule because, if the custodial environment remains stable, under the appellate court's standard, a court will never reach the best interest of the child inquiry. Stated differently, if the non-parent's

---

[7] However, the court in **Dalme** also remarked that if Article 133 applied, "the parent's paramount right to custody of the child" would be recognized and a "heavier burden" of proof must be met. **Dalme**, 09-0524 at 6, 21 So.3d at 481. Oddly, even applying the "heavier burden" which it did not further describe, the **Dalme** court remarked that "the same result should be reached." *Id.*

custodial environment remains stable, a court will never question whether a change to parental custody would be in the child's best interest.

In the situation just described, the appellate court's standard completely eliminates the possibility that a change in custody from a non-parent to a biological parent could be better for the child. This leads to the third reason why we conclude the court below has chosen the incorrect standard. The standard from the appellate court below diminishes, rather than respects, the constitutional rights of biological parents.

As Francisco has correctly argued, biological parents have constitutionally protected rights regarding their children. Further, as this court has explained, the Fourteenth Amendment to the United States Constitution protects a biological parent's due process right to "the companionship, care, custody, and management" of a child. See **In re Adoption of B.G.S.**, 556 So.2d 545, 549 (La. 1990) (citing **Santosky v. Kramer**, 455 U.S. 745, 758-59 (1982), and **Lassiter v. Department of Social Services**, 452 U.S. 18, 27 (1981)). Similarly, "we have implicitly recognized that the reciprocal rights and obligations of natural parents and children are among those unenumerated rights retained by individuals pursuant to La. Const. art. 1, § 24." **In re Adoption of B.G.S.**, 556 So.2d at 551. A biological parent cannot be deprived of these and other related rights without a procedure that adequately balances three factors:

> [F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.*, 556 So.2d at 552.

15

Using these three factors, we determined in **In re Adoption of B.G.S.** that a statutory scheme which failed to "require that … [an] unwed father be afforded any notice or a hearing prior to the termination of his parental rights by the mother's act of surrender of the child" did "not satisfy constitutional standards." ***Id.***, 556 So.2d at 548, 552. The court observed the significance of parental rights and emphasized the need to guard against terminating those rights without procedures geared toward minimizing the opportunity for mistaken judgment: "The risk of error or unfairness caused by human fault in the termination process [of parental rights] is not at all trivial"; however, the biological father "was not given *any* process before this termination." ***Id.***, 556 So.2d at 553. Although the state had an interest in facilitating adoptions, this court found the state's interest did not justify a presumption that "when an unmarried mother fails or refuses to consent to the designation of the putative unwed father on the child's birth certificate that the putative father is not the biological father, not fit to be a parent, or not committed to his parental responsibilities." ***Id.***

Here, the issue is not whether the biological father's rights should be terminated, but whether they should be expanded. Francisco already shared joint custody and sought to expand his role by being awarded sole custody or designated as the domiciliary parent in a joint custody arrangement.[8] However, the **In re Adoption of B.G.S.** factors counsel against the standard of proof articulated by the appellate court. Most significantly, because of the very real possibility that the circumstances of the

---

[8] Parenthetically, in **Hodges v. Hodges**, 15-0585, pp. 8-9 (La. 11/23/15), 181 So.3d 700, 706, we determined that there can only be one domiciliary parent. Thus, in any custody arrangement jointly shared with Kathy, the only practical expansion of Francisco's custodial rights would be a designation of him as the sole domiciliary parent. The concept of domiciliary parent applies only to joint custody arrangements. See La. R.S. 9:335. Therefore, if Kathy were to be excluded from joint custody, but Francisco were allowed to retain custody, that would give Francisco status of a sole custodial parent. Francisco's preferred modification was to have the district court designate him as domiciliary parent immediately, with a later transfer of "sole custody" to him.

non-parent custodian may not ever materially change, there is a correlative possibility that the biological parent may have no opportunity to prove that the child's best interests would be served by changing the custodial arrangement. Indeed, it is foreseeable that because of youth, impecunity, or other life situations, a parent might consent to a non-parent serving the role of a domiciliary parent. It is equally foreseeable that the parent would at least seek to place custody with a person (likely a relative) whom the parent deems will provide a stable environment for the child. If the parent has been fortunate enough to find such a person with whom to share joint custody, then under the appellate court's standard, even if the parent's circumstances radically change for the better, the parent can never regain domiciliary custody if the non-parent maintains the status quo.

Just as we ruled in **In re Adoption of B.G.S.** that denying a biological parent any process before termination of parental rights violated the parent's constitutionally protected interests in parenting, we cannot condone a situation which is so likely to permanently deny a parent who shares joint custody with a non-parent the opportunity to alter that custody arrangement.[9] We agree with Judge Liljeberg, who in partial dissent of the appellate court majority's decision reasoned, that the majority's standard would place a rehabilitated, deserving parent in the "untenable situation of needing his own child to be in an inadequate and unstable situation in order to obtain custody." **Tracie F.**, 15-224 at 5, 174 So.3d at 820 (Liljeberg, J., dissenting in part).

Having decided that the standard articulated by the appellate court is improper, we must determine the proper burden. Initially and specifically, we must decide

---

[9] We do not mean to imply in this case that a biological parent's constitutional interests are absolute or perpetual. See **In re Adoption of B.G.S.**, 556 So.2d at 558 (tasking a district court with determining whether a biological father had "lost, waived or otherwise had his constitutional rights terminated.").

whether the biological parent or the domiciliary parent (who is a non-biological parent) has the burden of proof when the biological parent seeks sole custody or status as a domiciliary parent. We must then determine what must be proven. Again, just as in our analysis of the appellate court's standard, we find legislative guidance from the comments to the Civil Code.

The jurisprudential distinction between "considered decrees" and "stipulated judgments" has been recognized by the legislature. For "considered decrees," "[a]n additional, jurisprudential requirement is imposed." La. C.C. art. 131, 1993 Revision Comment (d). Specifically, for a considered decree:

> [T]he proponent of change must show that a change of circumstances has occurred such that "the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or ... that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child." **Bergeron v. Bergeron**, 492 So.2d 1193, 1200 (La.1986).

*Id.*

The reason for imposing additional proof for considered decrees, as we noted in **Bergeron**, is to preserve stability for a custody issue that has been produced by the crucible of litigation. We explained: "the change of circumstances and heavy burden of proof rules protect" a beneficial custody arrangement "from improper or unnecessary relitigation after its establishment." **Bergeron**, 492 So.2d at 1196.

In its 1993 revision of Article 131,[10] the legislature signaled its approval of the **Bergeron** standard for considered decrees. Because the legislature has described the **Bergeron** standard in the revision comments to Article 131 as an "additional … requirement" applicable to "considered decrees" while indicating that the "best interest

---

[10] See 1993 La. Acts 261, § 1, effective January 1, 2014.

18

of the child" is the general standard for modifying custody decrees,[11] we conclude that, unless a custody judgment falls under the category of "considered decrees," the legislature intends for other custody decrees to be subject to the general standard. Although we are parsing a legislative comment, rather than a statute itself, by analogy, this principle supports our interpretation: "the mention of one thing in a statute implies the exclusion of another thing." **State, Dep't of Pub. Safety & Corr., Office of State Police, Riverboat Gaming Div. v. Louisiana Riverboat Gaming Comm'n & Horseshoe Entm't**, 94-1872, 94-1914, p. 17 (La. 5/22/95), 655 So.2d 292, 302. Even without the express aid of that principle, as noted earlier in this opinion, this is precisely how this court has previously interpreted Article 131 applies to stipulated judgments:

> [I]n cases where the original custody decree is a *stipulated judgment*, such as when the parties consent to a custodial arrangement, and no evidence of parental fitness is taken, the heavy burden of proof enunciated in **Bergeron** is inapplicable. … Instead, where the original custody decree is a *stipulated judgment*, the party seeking modification must prove (1) that there has been a material change of circumstances since the original custody decree was entered, and (2) that the proposed modification is in the best interest of the child.

**Evans**, 97-0541 at 13, 708 So.2d at 738.[12]

---

[11] See La. C.C. art. 131, 1993 Revision Comments (a) and (d).

[12] We also note one treatise contains the following observation: "**Evans** finally put to rest the dispute as to whether the **Bergeron v. Bergeron**, 492 So. 2d 1193 (La. 1986), standard applied to consent decrees. It does not." 1 ROBERT C. LOWE, LOUISIANA PRACTICE: LOUISIANA DIVORCE § 7:71 (2015).

The same treatise also describes two categories of requests to modify custody. One category is the "stipulated custody order," for which the "party seeking modification of a stipulated custody order must prove that there has been a material change of circumstances since the original custody decree was entered, and that the proposed modification is in the best interest of the child." *Id.* The second category is the "considered decree," for which "the party seeking a change of custody bears the burden of proving that a continuation of the present custody is so deleterious to the child as to justify a modification of custody, or of proving by clear and convincing evidence that any harm likely to be caused by a change of environment is substantially outweighed by the advantages to the child." *Id.*, § 7:72 (citing **Bergeron**, 492 So. 2d 1193).

In the instant case, neither Francisco nor Kathy provides us with a compelling reason why we should depart from our prior ruling in **Evans** and our long-standing adherence to it. Both Francisco and Kathy argue for applying La. C.C. art. 133 and each party takes a different view of what the test under Article 133 should be. However, as we noted earlier, the legislature has indicated a modification action such as this is governed not by Article 133, but by the best-interest-of-the-child test under Article 131. In addition to the legislature's indication, our own jurisprudence appears settled in adhering to our view in **Evans** that a request to modify a stipulated custody decree is governed by Article 131. See **Mulkey**, 12-2709 at 9-10, 118 So.3d at 364; see also **AEB v. JBE**, 99-2668 at 7, 752 So.2d at 760-61.[13] Thus, here, we continue to adhere to our interpretation in **Evans** and its progeny that a request to modify a stipulated custody judgment is governed by Article 131 and by the standard of proof described in **Evans**.

At this juncture, it is prudent for us to attempt to bring order to some differing burdens of proof found in the lower court jurisprudence. We also note that, in its review of the jurisprudence, the appellate court below was of the view that "[t]hree of the four Louisiana Circuit Courts which have addressed the question before us … have held that parents forgo the legal presumption that they are the proper custodian for the child when they enter into a consent agreement divesting them of some or part of the child's custody." **Tracie F.**, 15-224 at 50, 174 So.3d at 811. As we have

---

[13] In tacit agreement with this court's jurisprudence, at least one lower court has also had occasion to expressly mention that the codal provision relied on by the appellate court here, *i.e.*, La. C.C. art. 133, applies to "an <u>initial</u> custody contest between a parent and a nonparent." **Lamp v. Lamp**, 36,919, p. 9 (La.App. 2 Cir. 12/11/02), 833 So.2d 1224, 1230 (emphasis added). Another lower court has commented that when a "proceeding was <u>initiated</u> by nonparents seeking to divest the parents of custody, … clearly Article 133 applies." **Cathey v. Ogea**, 12-563, 12-324, p. 5 (La.App. 3 Cir. 8/22/12), 98 So.3d 953, 957. In the instant case, the custody contest was not an initial action by a non-parent seeking to divest a biological parent of custody; therefore, the custody contest is not governed by La. C.C. art. 133.

20

observed, the appellate court below (the Fifth Circuit Court of Appeal) resolved this perceived difference among the circuit courts by relying heavily on the Second Circuit's opinion in **Jones**. However, **Jones** did not address the precise issue presented here. In **Jones**, the biological parent had given up his parental rights in an earlier stipulated judgment. Here, however, Francisco maintained joint custody in the stipulated judgment. Based on this distinction, we find **Jones** inapplicable to the instant case.

The appellate court here found the Third Circuit to have been inconsistent in its burden of proof. See **Tracie F.**, 15-224 at 33-35, 174 So.3d at 801-02. We have already discussed the most recent pertinent decision from that court, **Dalme**, and from our earlier analysis, it should be apparent that we reject that court's opinion to the extent it found that La. C.C. art. 133 governs when a biological parent who shares joint custody with non-parents seeks to modify a consent decree that awarded domiciliary parent status to a non-parent. Rather, most notably from the revision comments to another provision, La. C.C. art. 131, we have found that Article 131 governs. Therefore, we approve of **Dalme** to the extent it held "such [consent] agreements may only be modified when there is a showing that there has been a material change in circumstances and that the modification would be in the best interest of the minor child." *Id.*, 09-524 at 3, 21 So.3d at 480.

The appellate court below contrasted the Third Circuit's **Dalme** opinion with an earlier Third Circuit opinion in **Cutts v. Cutts**, 06-33 (La.App. 3 Cir. 5/24/06), 931 So.2d 467. See **Tracie F.**, 15-224 at 33-35, 174 So.3d at 801-02. In **Cutts**, a biological mother had stipulated to a judgment by which paternal grandparents were awarded sole custody. *Id.*, 06-33 at 1, 931 So.2d at 468. The mother later filed a rule

21

to change custody to the mother. *Id.* The district court awarded custody to the mother; the grandparents appealed. *Id.* The **Cutts** court ruled: "we hold that a parent does not have to show a material change in circumstances and that a change is in the best interests of a child when disputing custody with a non-parent. Rather, the non-parent must show that an award of custody to the parent will result in substantial harm to the child." *Id.*, 06-33 at 5, 931 So.2d at 471.

Francisco urges that we should adopt the standard in **Cutts** and find that Kathy has failed to meet that standard. Although **Cutts** presented the situation in which a biological parent had surrendered custody, a distinction shared with **Jones**, *supra*, the standard announced by the **Cutts** court cannot survive our ruling in this case. Here, we have ruled that a biological parent with some custodial rights has the burden of proof to modify a stipulated custody arrangement. In contrast, the **Cutts** court ruled that a biological parent with no custodial rights had no burden of proof. Because parental rights are constitutionally protected, it would be both illogical and inequitable to allow a person with no custodial rights to have no burden of proof, but to impose the burden of proof on a person with custodial rights. Accordingly, we overrule **Cutts**, to the extent the appellate court imposed no burden of proof on a person who sought to modify a stipulated custody arrangement, but who had no custodial rights.

To further clarify the jurisprudence, the instant case presents the efforts to expand existing custodial rights in favor of a biological parent, who has joint custody, but who is not designated as the domiciliary parent. We are not presented with a custody contest between a biological parent who has voluntarily relinquished custody or whose parental rights have otherwise been terminated; such a contest represents a

22

separate class of cases which differs from the one which we presently decide.[14] There is a distinction between the efforts of a parent to *expand* custodial rights and the efforts of a parent to *regain* custodial rights. We do not, therefore, adopt the standards from the cases in which a parent seeks to *regain* custodial rights. However, the constitutional protection accorded to parental rights allows us to condense from our analysis in which we overruled **Cutts**, *supra*, this guiding principle: in an action to modify a stipulated custody arrangement, a parent who retains custodial rights should not have a greater burden of proof than a parent without custodial rights.

Having determined the appropriate burden of proof here and clarified differing approaches–some merely perceived by the court below and some actual–among the circuit courts, we next turn to the impact of the proper burden of proof on the instant case.

**B. Applying the Standard**

Notwithstanding that Francisco shared joint custody with Kathy by Francisco's earlier assent to a stipulated judgment, the district court ruled that Kathy had the burden of proving why Francisco should not be awarded sole custody. The district court found Kathy failed to carry that burden. The burden imposed by the district court is opposite to the proper burden, which is: "the party seeking modification must prove (1) that there has been a material change of circumstances since the original custody decree was entered, and (2) that the proposed modification is in the best interest of the child." **Evans**, 97-0541 at 13, 708 So.2d at 738. The district court's

---

[14] The appellate court below discussed, at length, additional cases in which a parent sought to regain custody rights. Some of those cases, such as **Millet v. Andrasko**, 93-520 (La.App. 1 Cir. 3/11/94), 640 So.2d 368, articulated burdens of proof similar to the standard we find applicable in the instant case. However, because **Millet** and **In re Hardimon**, 99-1569, 99-1570, pp. 4-5 (La.App. 4 Cir. 1/05/00), 751 So.2d 989, 993, neither conflict with nor directly address the present situation, we find it unnecessary to delve into them further.

imposition of a burden of proof inconsistent with that described in **Evans** was legal error.

In **Evans**, this court was also confronted with a custody arrangment that was the product of legal error, namely the district court's application of a presumption that had been removed by legislative revision. Concerning legal error, the **Evans** court explained:

> A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. See **Lasha v. Olin Corp.**, 625 So.2d 1002, 1006 (La.1993). Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. See **Lasha**, 625 So.2d at 1006. When such a prejudicial error of law skews the trial court's finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts *de novo*. **Lasha**, 625 So.2d at 1006.

*Id.*, 97-0541 at 7, 708 So.2d at 735.

Here, the district court's reversed burden of proof prejudiced Kathy's significant interest as D.'s domiciliary parent. The district court did not require Francisco to show: 1) there had been a material change in circumstances after the original custody award; and 2) the proposed modification is in the best interest of the child. See **Evans**, 97-0541 at 13, 708 So.2d at 738. Because we find the record was sufficiently developed, we apply the correct standard and determine the essential facts *de novo*. See *Id.*, 97-0541 at 7, 708 So.2d at 735.

The record provides two potentially significant changes in circumstances. The first is contained in an audio recording, in which D. arguably expressed an interest in living with Francisco, inasmuch as D. said he wished for "more time" with Francisco and to visit with Kathy on the weekends. In **Bergeron**, we indicated that a "child's

24

preference, in and of itself, with no explanatory evidence, ... is not a material change of circumstances affecting the child's welfare." **Bergeron**, 492 So.2d at 1203.

Here, there is explanatory evidence, but the evidence does not support Francisco's position. In the recording, D. also expressed an interest in "going to Houston sometimes ...[b]ecause that's where my friend lives." D. offered to give Francisco the friend's "home phone number and everything, so that's what I want you [Francisco] to tell Ma M'ere [Kathy]." D. also expressed in interest in staying with Francisco more because D. could "do karate" if he lived with Francisco. Therefore, examined in context, D.'s stated desire to live "more time" with Francisco appears to have been in D.'s mind a *quid pro quo* for visiting D.'s friend in Houston, and is also placed on par with participating in karate. Recalling also that these statements were made by an eight-year-old child, we do not find the child has articulated a material change of circumstances affecting the child's welfare. *Id.*

The other potential basis for finding a material change in circumstances emerges from the totality of Francisco's evidence regarding the relationship he has formed with D. Since the stipulated judgment with Kathy, Francisco has become greatly involved in D.'s life. Visitation with D. has become more regular. Francisco has provided D. with his own bedroom at Francisco's home. Francisco has afforded opportunities for religious development that are complementary to the religious traditions of D.'s early childhood upbringing. Francisco has cultivated D.'s interest in hunting and fishing, activities the child had not previously had much opportunity to pursue. D. regularly communicates by phone with Francisco on nights when D. is living at Kathy's home.

Francisco's heightened involvement stands in marked contrast to his disconnect from much of D.'s earlier life. In short, Francisco presented evidence that he has

transformed from a largely absentee parent to being integrally involved in the child's life. Inasmuch as this case involves a biological parent in a joint custody arrangement with a non-parent, and given the constitutional protection afforded parental rights, we hold that Francisco has proven–by his transformation from little involvement to being integrally involved in the child's life–a material change in circumstances. Compare **Hebert v. Blanchard**, 97-550, p. 5 (La.App. 3 Cir. 10/29/97), 702 So.2d 1102, 1105 (counting a father's newly "stabilized" domestic life as one among other material changes of circumstances).

Having found a material change of circumstances, we must next examine whether a change in custody would be in the best interest of the child. See **Evans**, 97-0541 at 13, 708 So.2d at 738. Factors for ascertaining the best interest of the child are set forth in La. C.C. art. 134, as follows:

> The court shall consider all relevant factors in determining the best interest of the child. Such factors may include:
>
> (1) The love, affection, and other emotional ties between each party and the child.
> (2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
> (3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
> (4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
> (5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
> (6) The moral fitness of each party, insofar as it affects the welfare of the child.
> (7) The mental and physical health of each party.
> (8) The home, school, and community history of the child.
> (9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
> (10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
> (11) The distance between the respective residences of the parties.

26

(12) The responsibility for the care and rearing of the child previously exercised by each party.

We find the record evidence on some of these factors is equipoise. For factors 1 and 2, there is every reason to believe both Kathy and Francisco have enduring emotional ties with D. (albeit Kathy's ties date back to the child's infancy–if not birth—while Francisco's ties have only recently been manifested), capacity and disposition for providing the child guidance. For factors 5 through 7, both Kathy and Francisco presented evidence of stable family units. Both are married and have the support of their spouses in caring for D. There is no evidence that either Kathy or Francisco is morally, mentally, or physically unfit to promote D.'s welfare. For factors 10 and 11, although there have been some obstacles and difficulties imposed by both Kathy and Francisco, overall the record shows each has demonstrated a willingness to work with the other so that the other can foster a relationship with D. The willingness to work with the other party has included coordinating transportation.

However, the remaining factors favor Kathy. The fourth factor particularly looms large, as D. has lived with Kathy for most of his life, and the record reflects Kathy has provided a stable and more than "adequate" environment. Compare **Hoskins v. Hoskins**, 36,031, p. 6 (La.App. 2 Cir. 4/5/02), 814 So.2d 773, 777 (explaining in a divorced father's action to modify a stipulated judgment that "[c]ontinuity and stability of environment are important factors to consider in determining what is in the child's best interest.").

Relatedly, as to the eighth factor regarding home, school, and community history, Kathy has been exemplary in fostering (and funding) D.'s education. Moreover, testimony established that D.'s current school was instrumental in identifying that D. had a learning impediment, for which he is now being medically

27

treated, and D. is now performing satisfactorily at the school. As to the twelfth factor, Francisco admittedly has been largely absent from D.'s life until recently. Francisco has been absent for many of D.'s formative years and only recently decided to become more involved. In contrast, even before being awarded custody, Kathy has been exemplary in her involvement in D.'s upbringing.

Kathy has also long demonstrated, in the terminology of the third factor, "[t]he capacity and disposition ... to provide the child with food, clothing, medical care, and other material needs." As with her involvement in D.'s upbringing generally, Kathy provided for many of D.'s material needs even when not required by any court order. Francisco, however, was relieved of his financial support obligation when Kathy was designated as the domiciliary parent.

The record reflects that Francisco was an adult in his 30s when D. was born, and Francisco has remained steadily employed. For the factors that weigh in Kathy's favor ( especially factors 3 and 8), we therefore note that Francisco did not lack the opportunity to meet the duties described in those factors.

Based on our *de novo* review of the record, although Francisco's recent involvement is commendable and is reflected in our finding some of the factors from La. C.C. art. 134 in equipoise between Francisco and Kathy, several of the remaining factors clearly weigh in favor of maintaining Kathy as the domiciliary parent as being in D.'s best interest. Accordingly, we agree with the appellate court inasmuch as we hold it is appropriate to reinstate the stipulated judgment by which Francisco and Kathy share joint custody and Kathy is designated as the domiciliary parent.

As a final matter, we note that the biological mother, Tracie, has filed a brief in this court, "adopt[ing] the responses and law cited in the [brief] filed by Kathy." In her brief, Tracie also "objects" to certain remarks by the district court, when sustaining

28

objections, that arguably accepted the proposition that Tracie has admitted to being an unfit parent. Moreover, through her brief, Tracie's endeavors to preserve her visitation rights as originally set forth in the stipulated judgment. Tracie asks that if this court finds a remand necessary, it "should only be done for the purpose of determining whether to appoint a co-parenting coordinator, and specifically setting the times and conditions for Francisco's … and Tracie['s] … custody/visitation in order to make sure that their visitation times do not overlap."

As background to Tracie's argument, we note that, after the district court conducted a hearing on the custody dispute between Francisco and Kathy, the district court ordered that a previous visitation scheduled (rendered on December 10, 2014) "remain in place through the end of the … 2014-15 school year." According to the appellate court, Tracie sought supervisory review of this ruling. The appellate court referred Tracie's supervisory writ application to the merits of Kathy's appeal, and ordered that "the July 8, 2015 judgment awarding Tracie supervised visitation is hereby vacated." See **Tracie F.**, 15-224 at 59, 174 So.3d at 816. Elsewhere, although not free from ambiguity, the appellate court appeared to remand the issue of visitation to the district court: "we vacate the trial court's July 8, 2015 visitation judgment. We remand this matter to the district court." See *Id.*, 15-224 at 4, 174 So.3d at 785. An intent to remand the issue of visitation appears to be consistent with the appellate court's ruling that "the trial judge failed to make a 'best interest' finding or analysis in modifying Tracie's visitation." See *Id.*, 15-224 at 59, 174 So.3d at 816.

Tracie has not filed in this court an application for supervisory review of the appellate court's ruling. Accordingly, to the extent it appears Tracie's "objection" seeks some sort of affirmative relief–perhaps striking the district court's

comments–we express no view. "It is well-settled that a party may not seek to change the judgment below or any part thereof unless he has appealed or petitioned for review." **Mosing v. Domas**, 02-0012, p. 13 n.6 (La. 10/15/02), 830 So.2d 967, 977 n.6 (citing **Matthews v. Consolidated Companies, Inc.**, 95-1925 (La. 12/8/95), 664 So.2d 1191, 1192, and **Roger v. Estate of Moulton**, 513 So.2d 1126, 1135 (La. 1987)). To the extent Tracie seeks to have the original visitation schedule from the stipulated judgment now reimposed, we similarly express no view. See **Mosing**, 02-0012 at 13 n.6, 830 So.2d at 977 n.6. It appears the original visitation schedule was replaced with the visitation order of December 10, 2014. In any event, none of the parties, including Tracie, has sought supervisory review of the issue of visitation. The sole request for supervisory review was submitted to this court by Francisco and was directed to the issue of custody, not visitation. Therefore, we express no view on issues of visitation. See **Id.**

## CONCLUSION

In this action to modify a joint child custody arrangement, the appellate court reasoned that the biological father, who because of his prior stipulation to designate a non-parent as a domiciliary parent, had the burden to prove that he had been rehabilitated as a parent. Indeed, the biological father had the burden of proving a material change in circumstances had occurred. This burden could be satisfied by showing he had been rehabilitated as a parent. However, the appellate court erred in reasoning that the biological father also had the burden of showing the environment provided by the non-parent had materially changed.

The appellate court overlooked legislative comments, as well as the prior jurisprudence of this court, establishing the applicable standard of proof: 1) there has

been a material change in circumstances after the original custody award; and 2) the proposed modification is in the best interest of the child. See **Evans**, 97-0541 at 13, 708 So.2d at 738. Nevertheless, the appellate court's ultimate ruling reinstating the custody arrangement originally stipulated to by the parties was correct. Applying the correct standard of proof to the record evidence, we determine that the biological father established a material change in circumstances, but failed to prove that modification of the stipulated custody judgment was in the child's best interest. Accordingly, while we disagree with the appellate court's reasoning, we affirm the appellate court's decision to reinstate the child's maternal grandmother as the domiciliary parent in a joint custody arrangement with the child's biological father.

**AFFIRMED**.

# SUPREME COURT OF LOUISIANA

# NO. 2015-CJ-1812

# TRACIE F.

# VERSUS

# FRANCISCO D.

**KNOLL, J., concurs in the result.**

I concur in the result for the reasons assigned by Justice Crichton.

03/15/16

SUPREME COURT OF LOUISIANA

NO. 2015-CJ-1812

TRACIE F.

VERSUS

FRANCISCO D.

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIFTH CIRCUIT, PARISH OF JEFFERSON

Hughes, J., dissenting.

I dissent and would reinstate the judgment of the trial court who is in the best position to evaluate this matter.

**SUPREME COURT OF LOUISIANA**

**NO. 15-CJ-1812**

**TRACIE F.**

**VERSUS**

**FRANCISCO D.**

**ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIFTH CIRCUIT, PARISH OF JEFFERSON**

**CRICHTON, J., concurs in the result and assigns reasons:**

I agree with the result reached by the majority. I write separately only to convey that, in my view, Francisco did not demonstrate a "material change of circumstances" sufficient to trigger the second prong of the analysis applied by this Court.

For eight years, the maternal grandparents served as the primary caregivers for their grandchild. Francisco's involvement during this time was minimal to nonexistent. In 2014, however, Francisco expressed a desire to spend more time with his son, and the grandparents acceded to his request. Francisco essentially asks this Court to find that the maternal grandparents' facilitation of contact between him and his son constitutes a material change of circumstances sufficient to alter the stipulated custody judgment.

Francisco's recent efforts to foster a relationship with his child do stand in stark contrast to his earlier profound indifference, and certainly mark a "change of circumstances." However, in my view, the record lacks evidence of a "transformation" or of Francisco being "integrally involved in the child's life[.]" In short, considering the unique set of facts and circumstances of this case, and consistent with prior analyses of lower courts, I find that the threshold of materiality has not been reached here. *See, e.g., Dalme v. Dalme*, 09-524 (La.

App. 3 Cir. 10/14/09), 21 So. 3d 477, *writ denied*, 09-2560 (La. 1/8/10), 24 So. 3d 868 (finding that positive changes in a father's life did not a constitute material changes of circumstances sufficient to modify a custody decree), and *Galliano v. Galliano*, 09-0565 (La. App. 4 Cir. 9/30/09), 2009 WL 8678650 (an increase in contact between father and children did not by itself constitute a material change in circumstances).

In another case that is particularly instructive, *Cormier v. Cormier*, 12-1340 (La. App. 3 Cir. 4/24/13), 112 So. 3d 1073, *writ denied*, 13-1561 (La. 7/19/13), 119 So. 3d 596, the father argued that, because the mother "willingly allowed him several instances of extra visitation, this amounts to a material change in circumstances from the previously entered consent judgment." *Id.* at 1077. The Third Circuit Court of Appeal rejected that argument, noting as follows:

> We strongly disagree with this contention and shudder to think of the potential chilling effect such a conclusion would have on encouraging cooperation between parents with joint custody. [The mother] should not be penalized for attempting to foster an amicable relationship with her ex-spouse and to allow her son extra time with his father.

*Id.*

The *Cormier* reasoning applies here with equal force. By finding that Francisco's increased contact can itself constitute a material change of circumstances, in my view, we risk inadvertently chilling a domiciliary custodian's desire to permit the child time with the other parent. For these reasons, I do not find that Francisco has met his burden to show a material change of circumstances has occurred, thus obviating the need to address the second prong of the analysis. In all other respects, I agree with the majority opinion.