MURPHY, J.,
CONCURS WITH REASONS
|4flI agree with the results reached in the scholarly, comprehensive majority opinion. I write separately to express my view as-to why the trial court abused its discretion in denying Vincent’s request for a complete custody evaluation. Further, in my view, while in loco parentis, defacto parent, and psychological parent are concepts that impact this case, they currently have. not been recognized by the legislature or Loui *944 siana eourts interpreting the law in custody determinations. In my opinion, they are not necessary for a complete review of the proceedings in this matter under this state’s current law.
In all custody determinations, the best interest of the child is the “overriding test to be applied in all child custody determinations.” Tracie F. v. Francisco D., 15-1812 (La. 03/15/16), 188 So.3d 231, 238. La. C.C. art. 131 instructs that “[i]n a proceeding for divorce or thereafter, the court shall award custody of a child in accordance with the best interest of the child.” “The primary consideration in a determination of child custody is the best interest of the child. This applies not only in actions setting custody initially, but also in actions to change custody.” Mulkey v. Mulkey, 12-2709, (La. 5/7/13), 118 So.3d 357, 364. Every child custody case must be examined in light of its own specific set of facts and circumstances, with the overriding goal of reaching a decision that is in the best interest of the child. McCormic v. Rider, 09-2584, (La. 2/12/10), 27 So.3d 277, 279.
La. C.C. art. 133 must be considered because this case involves a custody dispute between a biological parent and a non-parent. Pursuant to this article, custody to a non-parent may only be awarded if an award of joint custody or sole custody to the parent would result in substantial harm to the child.
Vincent has alleged, and presented evidence, including expert testimony, to support his allegations that awarding custody of the children to Paula, their | ^biological mother, would result in substantial harm. Vincent points out that Paula has older children from a prior marriage whom she voluntarily relinquished custody to their father. At the time of a deposition taken in 2014, Paula’s two children from her prior marriage were 15 and 17 years old. She testified that she relinquished custody of those children because she moved more than 150 miles away from them. Although Paula’s parents lived in the vicinity of the home of her older children, Paula chose to move to the New Orleans area not only to be with Vincent but also to be in close proximity to “other family members.” Paula testified that she began living with Vincent in New Orleans in either December 2000 or January 2001. Based on this testimony, it is apparent that Paula relinquished custody of her older children when they were approximately two and four years old. She admitted that she visits her older children three to four times per year. At the time of her deposition, Paula was pregnant with her new husband’s child.
In this case, Paula does not dispute Vincent’s assertions that she moved out of the home she shared with Vincent and the two minor children into a one bedroom apartment, leaving the minor children with Vincent for well over a year. She testified that she decided to leave Vincent when the children were four, but they were five at the time she actually moved out of the home. After leaving she visited the children infrequently.
Dr. Walsh was accepted by the court as an expert in psychology and was the only expert to testify in this matter. She interviewed Vincent and both minor children. Dr. Walsh testified that Vincent II was afraid when he was at Paula’s house; Vincent II gets yelled at and punished at Paula’s house. Dr. Walsh testified that Vincent II told her Paula’s husband, Robert yells. When Vincent II gets sad at Paula’s house, he seeks comfort from a toy and his sister, Caitlin. When Vincent II gets sad at Vincent’s house, he seeks comfort from Vincent and Caitlin. Dr. Walsh | testified that Caitlin spontaneously acted out a scene with dolls in which the mother screamed vulgarities at the father, while the father walked away. Dr. Walsh opined that there was more fear, discomfort and *945 volatility at Paula’s house than the children revealed.
Additionally, Vincent alleges that Paula’s husband consumes alcohol to the point of intoxication in the presence of the children. Paula did not deny this allegation in her deposition, but stated that she was present when this happened. Robert, Paula’s husband, testified that he drinks alcohol several times per week. Robert has been diagnosed with depression, anxiety, and post-traumatic stress disorder. At the time of his deposition, he was not employed; he was receiving social security disability income.
La. R. S. 9:331 allows the court to order an evaluation in a custody or visitation proceeding for “good cause shown.” Despite Vincent’s repeated requests, the trial judge refused to order an evaluation pursuant to this statute. The hearing on this matter left many unanswered questions. First, Paula’s history is that she gets into a relationship, has children, and then leaves the relationship and the children. There was no evaluation performed in this case to determine whether Paula will be able to provide a stable environment for these minor children. Second, there is no dispute that Paula’s husband frequently uses alcohol. There was no evaluation to determine whether he chronically abuses alcohol and the effect this could have on the minor children. Third, Dr. Walsh, whose expert opinions were apparently not considered by the trial judge, testified that the male twin was afraid at Paula’s house. Further evaluation needs to be performed to determine the cause of this fear.
In an e-mail dated August 9, 2010, which was attached to a Petition for Protection from Abuse filed by Paula on November 15, 2011, Paula wrote that she discovered Vincent is biologically a female several years after she started living |52with Vincent. Given this most hard to believe assertion, which certainly raises questions as to Paula’s credibility, it is difficult to understand how the trial judge accepted Paula’s version of the school yard altercation. It appears that the trial judge ignored the expert testimony of Dr. Walsh and used the school yard altercation to prohibit Vincent from having contact with the minor children until they are 18 years old. For all of these reasons, the trial court abused his discretion in failing to order a comprehensive custody/visitation evaluation as provided for in La. R. S. 9:331.
There is insufficient evidence in the record before us to support the trial court’s grant of Paula’s motion for involuntary dismissal and to determine whether an award of custody of the minor children to Paula would cause substantial harm and whether an award of custody to Paula is in the best interest of the children. Further, there is insufficient evidence in the record to support the trial court’s order prohibiting Vincent from having any contact with the children until they reach the age of eighteen. Accordingly, I concur with the majority’s decision to vacate the judgment dismissing Vincent’s petition for custody and remand for a comprehensive custody evaluation.