CHEHARDY, C.J.
Mr. S, the father, appeals the district court's October 25, 2017 judgment overruling his objection to the domestic commissioner's May 24, 2017 order maintaining a joint custody arrangement with Ms. R, the mother of their two minor children. For *554 the reasons that follow, we affirm the district court's October 25, 2017 judgment.
FACTUAL AND PROCEDURAL HISTORY
Mr. S and Ms. R, who were never married, have two minor children together.[1] Their daughter, KS, was born on August 31, 2009, and their son, AS, was born on December 17, 2013. AS is diagnosed with spina bifida.
Mr. S claimed that on or about February 1, 2015, Ms. R told him that she had used her tongue and mouth to clean AS's penis while bathing him. Mr. S asked Ms. R to leave the house that day. Ms. R responded by calling the police and reporting that Mr. S had been physically and verbally abusive to her.
On February 26, 2015, Ms. R moved out of the house and filed a petition for protection from abuse, in which she alleged physical and verbal abuse at the hands of Mr. S. In conjunction therewith, Ms. R obtained a temporary restraining order against Mr. S, prohibiting contact with her and placing the children in the temporary custody of Ms. R. This order was effective through March 18, 2015, at which time the matter would be heard. The next day, February 27, 2015, Ms. R filed a petition for custody of the two children. This petition was also set for hearing on March 18, 2015. On March 5, 2015, Mr. S answered and filed a reconventional demand to establish custody.
Following the hearing on Ms. R's petition for custody and the petition for protection from abuse, the parties entered into an interim consent judgment on April 20, 2015, wherein they agreed to joint custody and a visitation schedule. In this judgment, the domestic commissioner also dismissed with prejudice Ms. R's petition for protection from abuse. The judgment also ordered the parties to undergo a custody evaluation to determine the domiciliary parent, custody, visitation, and instructed them to participate in parenting classes. This judgment further ordered Mr. S to pay child support to Ms. R in the amount of $350.00 per month.
On May 25, 2015, nearly four months after Mr. S learned of the alleged oral sexual abuse of his son, he lodged a complaint with the Louisiana Department of Children and Family Services ("DCFS"). It is not entirely clear from this designated record, but it appears that when speaking with the DCFS case agent, Ms. R somehow inculpated herself which led the agent to validate the oral sexual abuse complaint. At the hearing on September 25, 2017, however, Ms. R denied this and explained that her "confession" stemmed from a misunderstanding of the documents she was signing. She described the incident that was misconstrued as oral sex:
I ran out of wipes...and so he was crying because he didn't want to be on his back, and so I got nervous, and the first thing I thought of is-and I spat on my knuckle to wipe part of the rim of his penis, and that's exactly what happened.
Mr. S spoke with JPSO detectives about the allegation the next day that resulted in a police report. The record does not reflect that criminal charges were filed against Ms. R. On May 27, 2015, Mr. S filed a petition for protection from abuse, in which he alleged the oral sexual abuse, among several other concerns.
That same day, the domestic commissioner issued a protective order granting temporary custody of the children to Mr. S
*555 and set the matter for a show cause hearing. Meanwhile, in accordance with the parties' April 20, 2015 consent judgment, on May 29, 2015, the parties agreed to the appointment of a custody evaluator pursuant to La. R.S. 9:331.
Over the next several months, the show cause hearing was continued several times, during which time the conditions of the May 27, 2015 protective order remained in effect. On November 30, 2015, the custody evaluator issued his report, in which he recommended joint custody.
On December 2, 2015, Ms. R obtained her own protective order from the domestic commissioner which granted her temporary custody of the children, and set the matter for a show cause hearing.
With the custody evaluator's report issued, on January 5, 2016, Mr. S moved to set a hearing on his previously-filed reconventional demand to establish custody. Trial on the matter was set for February 3, 2016.
On January 28, 2016, Mr. S moved to voluntarily dismiss his petition for protection from abuse and requested the parties proceed to the merits of the custody issue. The full custody trial was held before the domestic commissioner on May 4, 2016.
Thirteen days later, in a letter dated May 17, 2016, DCFS notified Mr. S that his allegation that Ms. R had sexually abused AS was found to have been valid and that DCFS was notifying the district attorney, as required by law. The letter specifically stated: "We have determined...that the facts show, by the agency standard, the report is justified (valid) for Oral Sex of your child by [ER]." The record does not reflect that criminal charges were filed against Ms. R.
The domestic commissioner issued his judgment on July 25, 2016. Adopting the recommendations of the custody evaluator, the commissioner awarded Mr. S and Ms. R joint custody and did not designate either as the domiciliary parent.
On February 21, 2017, Mr. S filed another petition for protection from abuse, in which he raised additional allegations of child neglect/abuse against Ms. R. He alleged that on or about November 27, 2016, while KS was in the care of Ms. R, a thirteen-year-old boy was permitted to play in KS's bedroom, where he touched KS's vagina and forced KS to touch his penis. KS complained to her mother, who ultimately called the police, resulting in a JPSO police report. The record indicates that the teenager was later adjudicated in juvenile court.
Mr. S also alleged that AS sustained a burn on the bottom of his foot while in Ms. R's care on October 6, 2015, and that Ms. R attempted to conceal it from him. Mr. S stated that he did not learn of this injury until October 8, 2015, when he picked up his son from daycare. Due to AS's spina bifida, he attends a daycare that caters to special needs children where all of the employees have medical training. The notes of Danielle Corso, a registered nurse at the daycare, reflect that when Ms. R dropped off AS on October 7, 2015, she notified the daycare of the burn. Nurse Corso's notes also state: "[Ms. R] then asked if there was anything we could apply to it that might make it heal faster because she did not want [AS's] father to see it." Similarly, the notes dated October 8, 2015 reflect that when Ms. R dropped off AS that morning, she asked, "Can we keep his socks on to keep it covered so his dad won't see it?" The notes further reflect that the daycare notified AS's pediatrician, Dr. Reita Lawrence, who instructed the daycare to notify DCFS. In her deposition, however, Dr. Lawrence did not recall instructing the daycare to notify DCFS. She explained that she advised the nurse if she *556 felt it needed to be reported, then report it.
Mr. S followed this petition for protection from abuse with an ex parte motion for change of custody on March 17, 2017. In this motion, Mr. S detailed the allegations against Ms. R of sexual abuse, neglect, and child endangerment. This matter was heard on May 24, 2017, following which the domestic commissioner denied relief on Mr. S's motion for change of custody, continued the joint custody arrangement, and named Mr. S as the domiciliary parent.
On May 30, 2017, Mr. S filed an objection to the May 24, 2017 order, specifically objecting to the continued arrangement of joint custody.[2] This objection was heard before the district court on September 25, 2017, in which extensive testimony and evidence was adduced.[3]
On the oral sex allegation, both Mr. S and Ms. R testified. She denied touching her son's penis with her tongue or mouth, but explained that she spit on her fingers to clean her son's penis. The police report investigating this incident was introduced, as was the May 27, 2016 letter from DCFS that found the allegation to be valid.
Regarding the incident involving KS and the teenaged boy, Ms. R did not deny it occurred and explained that she called the police.
Other testimony established that when Dr. Lawrence prescribed KS Vyvanse for attention deficit disorder, Ms. R asked if she could try the medicine for herself. Dr. Lawrence advised her against it, but, according to Mr. S, Ms. R nonetheless tried some of the medicine. Ms. R denied this.
Ms. R offered the testimony of Dr. Roy Salgado, a licensed therapist who supervised KS's therapy treatment for attention deficit disorder and was qualified as an expert in child psychology and family counseling. Dr. Salgado testified that he was aware of the allegations of sexual abuse of both children, but nonetheless believed that KS would benefit from the joint custody arrangement. He was unaware that DCFS had validated the abuse of AS, and opined, "I would never say that someone who has sexually abused a child should have access to children." But he added: "Abandonment impacts children more so than molestation."
Mr. S offered the testimony of Dr. Kathryn Lawing, a licensed developmental psychologist who was qualified as an expert in child and developmental psychology. Dr. Lawing, who did not personally interview either of the parties or the children, was presented with "hypothetical" scenarios based on the facts in this case and testified that "she would have some *557 very serious clinical concerns about the children's safety within the presence of [Ms. R]."
At the conclusion of the hearing, the court took the matter under advisement and issued its judgment without reasons on October 25, 2017, wherein the court overruled defendant's objection to the domestic commissioner's order entered on May 24, 2017. The court further ordered that, in accordance with the domestic commissioner's ruling of May 24, 2017, the custody judgment of July 25, 2016 was to remain in effect and Mr. S shall be the domiciliary parent.
In accordance with Twenty-Fourth Judicial District Court Rule 35.5(E),[4] Mr. S moved for and was granted an appeal from this ruling on November 21, 2017.
Upon review of the designated record in this case, this Court requested two per curiams from the district court to gain further insight into the district court's October 25, 2017 ruling. The record was supplemented with these per curiams on September 18 and 25, 2018.
DISCUSSION
On appeal, Mr. S assigns three errors: (1) the district court manifestly erred in failing to properly consider the facts regarding his and Ms. R's custody modification; (2) the district court misapplied the standard of review; and (3) the district court erred by disallowing experts to testify.
Assignment of Error One
In Mr. S's first assignment of error, he argues that the district court failed to give proper consideration to the facts under the guiding standard that custody is to be awarded in accordance with the best interest of the children.
It is well settled that the paramount consideration in any determination of child custody is the best interest of the child. See Tracie F. v. Francisco D. , 15-1812 (La. 3/15/16), 188 So.3d 231, 238-39. This applies not only in actions setting custody initially, but also in actions to change custody. Id. at 239.
The Louisiana Supreme Court recognizes a distinction between two types of custody awards. Tracie F. , supra . One type of custody award is a "considered decree," which is an award of permanent custody in which the trial court receives evidence of parental fitness to exercise care, custody, and control of children. Id. The second type of custody award has been referred to as a "stipulated judgment," which a court renders when the parties consent to a custodial arrangement, and no evidence of parental fitness is taken. Id.
Different burdens of proof apply to each of the two types of custody awards. Tracie F. , supra . The jurisprudential requirements of Bergeron v. Bergeron , 492 So.2d 1193 (La. 1986) are applied to actions to change custody rendered in considered decrees. Id. That is, the proponent of change must show that a change of circumstances materially affecting the welfare of the child has occurred since the prior order respecting custody. Id. Additionally, for considered decrees, the party seeking a change bears the heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and *558 convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child. Id.
In contrast to considered decrees, in cases where custody has been established by a stipulated judgment, the party seeking modification must prove: (1) that there has been a material change of circumstances since the original custody arrangement was entered, and (2) that the proposed modification is in the best interest of the child. Tracie F. , supra at 239-40.
Here, the initial custody arrangement of April 20, 2015 was established by stipulated judgment when Mr. S and Ms. R agreed to a joint custodial arrangement. This changed on July 25, 2016, when the domestic commissioner entered a considered decree after a full custody trial and established the joint custodial arrangement currently in effect.
On March 17, 2017, Ms. S sought to modify this arrangement imposed by considered decree. Accordingly, the jurisprudential requirements of Bergeron , supra , govern, and Mr. S bore a burden of proving: (1) a change of circumstances materially affecting the welfare of the child has occurred since the prior order respecting custody; and (2) the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or, by clear and convincing evidence, that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child. Id.
At the time of the considered decree in 2016, La. C.C. art. 132 provided:
If the parents agree who is to have custody, the court shall award custody in accordance with their agreement unless the best interest of the child requires a different award.
In the absence of agreement, or if the agreement is not in the best interest of the child, the court shall award custody to the parents jointly; however, if custody in one parent is shown by clear and convincing evidence to serve the best interest of the child, the court shall award custody to that parent.
At the time of the full custody trial on May 4, 2016, DCFS had not yet made known its validation of Ms. R's sexual abuse of AS and the sexual abuse of KS had not yet occurred. Therefore, based on the evidence before him on May 4, 2016, we find no abuse of the domestic commissioner's discretion in his determination, in accordance with La. C.C. art. 132, that joint custody was in the best interest of the children.
However, when Mr. S filed his ex parte motion for change of custody on March 17, 2017, he attached to his motion the DCFS letter validating Ms. R's sexual abuse of AS, the police report investigating the incident, and the police report investigating the incident involving KS. The commissioner denied this motion and maintained joint custody, to which Mr. S objected. At the district court's hearing on this objection, evidence and testimony was adduced regarding the sexual abuse of AS and KS, and the district court overruled Mr. S's objection.
We are asked to determine whether the district court abused its discretion in overruling this objection and maintaining the joint custodial arrangement. See A.E.B. v. J.B.E. , 99-2668 (La. 11/30/99), 752 So.2d 756, 761 ("The determination of the trial judge in child custody matters is entitled to great weight, and his discretion will not be disturbed on review in the absence of a clear showing of abuse.").
This Court's primary concern here is the alleged sexual abuse of both children. It is *559 this Court's opinion that the numerous other allegations, even considered collectively, amount to a catalog of the trials and tribulations of parenting. They do not, on their own, warrant judicial interference. Sexual abuse of both children, on the other hand, does and, in our view, is the crux of this case. Accordingly, we focus our attention and analysis on those allegations.
As noted above, to successfully change the custody arrangement imposed by considered decree, Mr. S was burdened with proving: (1) a change of circumstances materially affecting the welfare of the child has occurred since the prior order respecting custody; and (2) the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or, by clear and convincing evidence, that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child. Id.
The Louisiana Supreme Court has recognized that this Bergeron standard has been sparingly applied to upset considered custody arrangements and is reserved for the most egregious offenses. Gray v. Gray , 11-548 (La. 7/1/11), 65 So.3d 1247 n.16. One such case in which the Bergeron standard had been met involved oral sexual abuse of the child by his older stepbrother. See A.E.B. v. J.B.E. , 99-2668 (La. 11/30/99), 752 So.2d 756.
In A.E.B. , following the parties' separation, they both sought sole custody of their infant son, JE. A.E.B. , supra at 757. After an evidentiary hearing, the trial court awarded joint custody and designated the mother as domiciliary parent subject to visitation in favor of the father as set forth in a joint custody and visitation implementation plan. Id. Approximately two years later, JE's mother remarried and her husband moved into her home with his two children, an eight-year-old son, BB, and a six-year-old daughter. Id. at 757-58. Soon thereafter, JE, who was about four years old at the time, reported to his father and paternal grandmother that BB had placed his mouth on JE's penis. Id. at 758. His father reported the incident to the sheriff and Child Protective Services. Id.
After approximately one year of JE's complaints that his penis was burning and treatment by several doctors and counselors, JE's father filed a petition to change custody to make him the domiciliary parent. A.E.B. , supra at 758. Following a hearing on the petition, at which testimony and evidence was introduced regarding the sexual abuse allegations, the trial court found a change in circumstances materially affecting the welfare of JE, including his mother's remarriage, the introduction of BB into JE's life, and the proven instances of inappropriate sexual contact by BB upon JE. Id. at 761. The court concluded that JE's father met the heavy burden of proving that JE's interest would be better served by making the father the domiciliary parent with visitation granted in favor of the mother with certain conditions or restrictions including no overnight visitation with the mother when BB was spending the night, that JE was not allowed to be alone with BB at anytime and that adult supervision was required at any time JE and BB were together. Id. The court therefore ruled that the parties would continue to have joint custody, but designated the father as domiciliary parent. Id.
The Louisiana Second Circuit reversed, see AEB v. JBE , 32,647 (La. App. 2 Cir. 8/11/99), 741 So.2d 189, but on certiorari review, the Louisiana Supreme Court reversed the Second Circuit and reinstated the trial court's judgment.
In determining that the Bergeron standard had been met, the supreme court found "[t]he change of circumstances is not based upon one act or incident but results *560 from a combination of factors including the remarriage of JE's mother, the introduction of BB into JE's life, the occurrence of incidents of inappropriate oral sexual conduct perpetrated by BB upon JE and the failure of JE's mother to acknowledge that these incidents occurred and take sufficient steps to prevent any future occurrences." A.E.B. , supra at 761.
In the instant case, we conclude that Mr. S has proven by a preponderance of the evidence that there has been a material change of circumstances affecting the children's welfare since the custody trial on May 4, 2016, and the resultant custody order of July 25, 2016. This is evidenced by DCFS's validation of the sexual abuse of AS and the testimony of both Ms. R and Mr. S that KS was sexually abused by a teenaged boy.
As for the second prong of the Bergeron standard, this Court has recognized that an unsupported allegation of sexual abuse against a party is insufficient to justify modification of a custody agreement, see Rodriguez v. Wyatt , 11-82 (La. App. 5 Cir. 12/12/11), 102 So.3d 109, 117. The Louisiana Supreme Court's decision in A.E.B. , supra , on the other hand, makes clear that supported allegations of sexual abuse are sufficient to justify modification of even a considered decree.
In A.E.B. , after JE's initial disclosure of the abuse, JE was referred to a psychologist, who met with JE on three or four occasions. A.E.B. , supra at 758. This psychologist testified that after their several meetings, which included a variety of tests and clinical interviews, he concluded that oral sexual contact had occurred on several occasions. Id. at 758-59. A second treating psychologist, who interviewed JE and his father only once, concluded there was a seventy-five percent likelihood that sexual contact had occurred. Id. at 759. The supreme court found the psychologists' testimony, in conjunction with testimony from JE's father and paternal grandmother, established by a preponderance of the evidence that sexual contact had occurred. Id. at 761. The court concluded: "In sum, we conclude that the father has met the heavy burden of proving the present domiciliary custody with the mother, due to the change in circumstances, is so deleterious to the child that a modification of the custody decree is warranted." Id. at 762.
In the present case, the evidence offered on the alleged sexual abuse of AS was the conflicting testimony of Ms. R and Mr. S, and the DCFS letter validating the allegation. And on the sexual abuse of KS, while the parties may disagree on details of the incident, the parties do not dispute that the incident occurred.
Additionally, expert testimony was offered regarding the impact of the abuse on the children. Dr. Salgado, the therapist who had been supervising KS's treatment for attention deficit disorder prior to her sexual battery and who treated her after the sexual battery, testified that KS "appeared to be resilient and responding in as well a manner as anyone would expect someone to respond" to sexual battery. He explained that KS's "preoccupation was more with her worry about her parents and their arguing, and she not having a relationship with one or the other." He added:
Children thrive on having good relationships with both parents. Each parent brings to the relationship different skill sets and different attributes that are beneficial, and [KS] appears to have relationships with both parents that she cherishes and that she appreciates and that she benefits from. [KS] does not appear to feel threatened or in any imminent danger within the company of either of the parents.
* * *
*561 I believe if [the joint custody arrangement] stays this way, [KS]...would benefit from the way that it currently is. She would benefit from having both her mother and her father in her life on a regular basis.
Regarding the sexual abuse of AS, Dr. Salgado acknowledged that while he knew that a complaint of sexual abuse by Ms. R against AS had been submitted to DCFS, he did not know how DCFS ruled on the complaint. So he opined on the hypothetical scenario in which DCFS confirmed a complaint of sexual abuse by a parent: "I would never say that someone who has sexually abused a child should have access to children." In the end, Dr. Salgado concluded: "These parents need to put their animus aside and do what's in the best interest of [KS] and [AS]." Dr. Lawing, on the other hand, did not personally interview either of the parties or KS or AS and offered no opinion on the custody arrangement.
In the district court's September 25, 2018 per curiam , the court explained its appreciation of the DCFS-validated complaint against Ms. R:
A DCFS investigator visited and questioned [Ms. R] at her home regarding the allegations, and [Ms. R] willingly answered her questions. However, [Ms. R] was not represented by counsel at that meeting. [Ms. R] told the investigator: "I may have said I put some spit on his penis, but I did not say mouth. I did not say anything about putting my mouth in (sic) my son's penis." The DCFS investigator then presented [Ms. R] with a document to sign. That document, a copy of which has not been provided to this Court, apparently provided the DCFS investigator with sufficient evidence to conclude, "by agency standards," that [Mr. S's] report was justified. To this Court's knowledge, DCFS did not conduct any further investigation.
Despite finding that the report was justified, the children were not removed from the home at that time. The DCFS investigator presented [Ms. R] with a "Safety Plan," and informed [Ms. R] that she would have to attend parenting classes. The matter was turned over to and investigated by the police department, and [Ms. R] was not arrested. The matter was reported to the District Attorney who did not press charges. The matter was considered by the Juvenile Court who did not revoke [Ms. R's] custody. The matter was considered by a custody evaluator who did not recommend that the children be removed from [Ms. R's] custody. The matter was considered by the Domestic Commission twice; yet, he ordered that the parties have equal shared custody.
It is this Court's opinion that [Mr. S] embellished the facts when reporting the incident to DCFS, and that [Ms. R] unwittingly substantiated those allegations by signing a document presented to her by a DCFS investigator outside the presence of counsel. This is a case of "he said/she said," and the Court found [Ms. R] to be the more credible witness. Furthermore, other than DCFS, no other agency or Court (including this one) has found that the allegations rise to the level of sexual abuse.
When confronted with conflicting testimony, the trier of fact is tasked with a credibility determination and is free to accept or reject, in whole or in part, the testimony of any witness. See Greene v. Lovisa , 16-660 (La. App. 5 Cir. 5/17/17), 221 So.3d 270, 278, writ denied , 17-1017 (La. 10/9/17), 227 So.3d 837. These determinations of credibility greatly influence the factual inferences drawn from the testimony, where the nuances in a witness's *562 demeanor and tone of voice bear so heavily upon the listener's understanding and belief in what is said. Id.
Here, the district court discounted the DCFS letter of May 17, 2016, was left with the conflicting testimony of Ms. R and Mr. S, and found Ms. R more credible. As a result, the court determined that the alleged sexual abuse of AS by Ms. R was not proven by a preponderance of the evidence, and thus neither La. R.S. 9:341[5] nor La. R.S. 9:364[6] was triggered. As an appellate court, we will not second-guess the district court's credibility determinations. Where conflict exists in the testimony, a factfinder's reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's. See Magee v. W. Jefferson Levee Dist. , 17-294 (La. App. 5 Cir. 12/13/17), 235 So.3d 1230, 1245.
In its custody determination, the district court also weighed the sexual abuse of KS. It was not disputed that this incident occurred, and the facts suggest that it was an unfortunate incident brought on by a momentary lapse in better judgment. However, Ms. R responded properly by immediately reporting the incident to the police and notifying Dr. Salgado, KS' treating psychologist.
Dr. Salgado testified that KS is resilient and that she is responding well. He explained that his primary concern is KS's relationship with her parents. He believed that she would benefit from a relationship with both parents, and ultimately opined that the joint custody arrangement is in her best interest.
In a child custody action, a trial court is not bound by the testimony of an expert; rather, expert testimony is to be weighed the same as any other evidence. McCaffery v. McCaffery , 13-692 (La. App. 5 Cir. 4/9/14), 140 So.3d 105, 116-17. Thus, the effect and weight to be given to expert testimony is within the broad discretion of the trial court, who may accept or reject in whole or in part the opinion expressed by an expert. Id. Here, the district court evidently accepted Dr. Salgado's testimony, and we find no abuse of the court's discretion in doing so.
In conclusion, we must admit concern with the fact that DCFS validated oral sexual abuse of AS. Cognizant, however, that our review is limited to a cold and designated record, we requested two per *563 curiams from the district court to try to better understand this troubling case. After extensive consideration of the record, the parties' briefs, the district court's per curiams , and oral argument, we are satisfied that the district court accorded the abuse allegations due consideration in its final determination that joint custody is in the children's best interest. Upon our review, we therefore conclude that the district court did not abuse its discretion in determining that the second prong of Bergeron was not satisfied and that joint custody is in the children's best interest.
This assignment of error is without merit.
Assignment of Error Two
In Mr. S's second assignment of error, he argues that the district court committed legal error when it did not apply the correct standard governing custody determinations, i.e. , that custody is to be awarded in accordance with the best interest of the children, but applied a standard that parental cooperation is the paramount concern. He argues this legal error necessitates our de novo review of this matter.
In support of this argument, Mr. S cites a portion of the district court's remarks at the conclusion of the hearing on September 25, 2017, in which the court directly addressed Mr. S and Ms. R:
I hope [the children] don't have bad feelings about either one of you because of...something you've done or something you've failed to do. And I tell parents all the time that I think that's one of the worse things that parents can suffer in the future is to realize that they've done something or they failed to do something that has had a lasting impact on-a negative impact on the children. I don't want either of you in the future to have those guilt[y] feelings.
* * *
I can't make you like each other. I can't make you be friends. I think that would nice for the benefit of the children if some day you could do that because I've seen a lot of couples that eventually they've seen the light and that happens. You know, whatever happened between the two of you as adults, that shouldn't affect the kids whenever you have animosity against [Mr. S] or [Mr. S] has animosity towards you, [Ms. R]. That's neither here nor there, it should not affect the kids, okay?
Initially, we note the well-settled rule that a trial court's oral or written reasons for judgment form no part of the judgment, and that appellate courts review judgments, not reasons for judgment. Double NRJ Trucking, Inc. v. Johnson , 17-667 (La. App. 5 Cir. 5/16/18), 247 So.3d 1125, 1131. Nevertheless, a court of appeal may review the lower court's reasons "to gain insight" into the court's judgment. Id.
The district court's remarks here do not constitute the court's "reasons for judgment"; rather, they are sage counsel that we encourage the parties to heed. And although these remarks are not the subject of our review, we nonetheless consider them insofar as Mr. S offers them as support for his contention that the district court applied the incorrect legal standard in determining custody. In so doing, we observe that in his citation of the district court's remarks, Mr. S omitted the following portion that we emphasize here with italics:
...I don't want either of you in the future to have those guilt[y] feelings.... Don't have those guilt[y] feelings. You won't if you both put the children first and you make them number one.
And...sometimes it's not convenient for mom or dad, but it's the right thing for the kids, or it's not maybe in the best interest of the mom or the dad, but it's *564 in the best interest of the children, and that's what you have to consider. When you make those decisions or any decisions you make in the future that concerns the children, don't think about...what's best for me, what's more convenient for me. Think about what's best for the kids because let me tell you what happens. Good parents sacrifice for their kids. Good parents make sacrifices for their kids, and so, again, if you do that, I think you're going to be happier, the kids are going to be happier, and they'll grow up to be the good people that you want them to be. So please try to remind yourselves how important that is.
I can't make you like each other....
This omitted portion makes clear that in offering advice to both parents, the court intended to convey that the best interest of the children should be the guiding standard in all decisions affecting the children. To the extent Mr. S submits that his cherry-picked portion of the court's remarks demonstrates that the court applied a standard other than the best interest of the children, we find no merit to this argument. This advice does not indicate, one way or the other, what legal standard the court applied in its custody determination. That, we find, is established in the district court's September 18, 2018 per curiam .
Therein, the court described the issue as follows: "The issue presented is whether [Mr. S] has proved by clear and convincing evidence that the current joint custody arrangement is deleterious to the children, and that an award of sole custody to [Mr. S] would be in the best interest of the children." The court also set forth the governing law as follows: "The burden on the parent seeking sole custody is to demonstrate, by clear and convincing evidence, that the granting of custody to that parent alone will be in the best interest of the child." Upon our review of the designated record in this matter, we conclude that the district court applied the standard of the children's best interest in determining custody.
This assignment of error is without merit.
Assignment of Error Three
In Mr. S's third assignment of error, he argues that the district court improperly excluded expert testimony based on a res judicata exception that was adjudicated subsequent to the testimonies of both experts.
On April 17, 2017, in response to Mr. S's Motion for Change of Custody, Ms. R filed exceptions of no cause of action and res judicata. On the exception of res judicata, Ms. R argued that the incidents of oral sexual abuse and the burn had been adjudicated at the custody trial before the domestic commissioner on May 4, 2016. She submitted that because Mr. S's motion references these already-adjudicated incidents, his motion should be dismissed pursuant to the exception of res judicata. On April 26, 2017, the domestic commissioner overruled the exception of no cause of action and sustained the exception of res judicata, barring Mr. S from relying on these allegations previously adjudicated at the May 4, 2016 hearing.
On July 31, 2017, Mr. S filed a memorandum in support of his motion for change of custody, in which he again raised the oral sexual abuse and burn incidents. Ms. R responded with a motion to strike, in which she sought to have these issues stricken pursuant to the res judicata ruling. This motion was referred to the September 25, 2017 hearing.
At that hearing, before the motion to strike was taken up, during the cross-examination of Dr. Salgado, Mr. S's counsel began to question the doctor on the *565 oral sexual abuse incident but stopped to seek the court's advice on the res judicata issue. Counsel for Ms. R objected to the questioning, and the court permitted the questioning to continue. Later in the hearing, after both experts had testified, the court took up Ms. R's motion to strike. Argument was submitted, the court denied the motion to strike and permitted questioning of the oral sexual abuse and burn.
Mr. S submits that because the court made this ruling after the testimony of the experts, the experts were not permitted to be questioned on those topics. This, he argues, was prejudicial and constitutes reversible error.
Our review of the transcript of the September 25, 2017 hearing reveals that both experts were questioned about the oral sexual abuse and the burn and the court did not restrict this questioning. We conclude this argument is without merit.
DECREE
For the foregoing reasons, we affirm the district court's October 25, 2017 judgment.
AFFIRMED

Because the parties were never married, we are unable to presume Mr. S's paternity on the basis of marriage. See La. C.C. art. 186. However, Mr. S was adjudicated the children's biological father and the parties do not dispute Mr. S's paternity of KS and AS.

La. R.S. 13:717(F)(4)(b) provides:
Any party who disagrees with a judgment or ruling of a commissioner may file a written objection thereto. The objection shall be filed within three days of the judgment or ruling being received by the party either from the commissioner or by service through the clerk of court and shall be filed in accordance with the rules of the Twenty-fourth Judicial District Court. The objection shall be heard by the judge of the Twenty-fourth Judicial District Court to whom the matter was originally allotted.
The domestic commissioner's May 24, 2017 ruling was issued on Wednesday. The following Monday, May 29, 2017, was Memorial Day, a legal holiday. See La. R.S. 1:55(A)(1). Thus, in accordance with La. C.C.P. art. 5059, Mr. S's objection was timely.

La. R.S. 13:717(F)(4)(c) provides:
The judge may decide the objection based on the record of the proceedings before the commissioner or may receive further evidence and rule based on that evidence, together with the prior evidence, or may recommit the matter to the commissioner with instructions.

Twenty-Fourth Judicial District Court Rule 35.5(E) provides: "Any party who is aggrieved by a judgment entered by a district judge on objection from a decision of the domestic commissioner may appeal or take a writ from that judgment in the same manner as any other judgment entered by a district court."

The version of La. R.S. 9:341 in effect at the time of the custody trial provided in pertinent part:
A. Whenever the court finds by a preponderance of the evidence that a parent has subjected his or her child to physical abuse, or sexual abuse or exploitation, or has permitted such abuse or exploitation of the child, the court shall prohibit visitation between the abusive parent and the abused child until such parent proves that visitation would not cause physical, emotional, or psychological damage to the child. Should visitation be allowed, the court shall order such restrictions, conditions, and safeguards necessary to minimize any risk of harm to the child. All costs incurred in compliance with the provisions of this Section shall be borne by the abusive parent.

The version of La. R.S. 9:364 in effect at the time of the custody trial provided in pertinent part:
D. If any court finds, by clear and convincing evidence, that a parent has sexually abused his or her child or children, the court shall prohibit all visitation and contact between the abusive parent and the children, until such time, following a contradictory hearing, that the court finds, by a preponderance of the evidence, that the abusive parent has successfully completed a treatment program designed for such sexual abusers, and that supervised visitation is in the children's best interest.