WICKER, J.
Appellant, Rhonda Sutton Guidry, seeks review of a considered custody decree that granted joint custody of the minor child to the parents but provided that appellant's visitation period with the child be supervised. For the following reasons, we find that, under the facts of this case, the trial judge did not abuse his discretion in entering the custody judgment at issue.
FACTUAL AND PROCEDURAL BACKGROUND
The parties in this matter, Darrin Guidry and Rhonda Guidry, divorced on July 13, 2016. This litigation concerns the physical custody of the parties' one minor child, C.G. During the pendency of the divorce proceedings, on November 2, 2015, the parties entered into a stipulated consent judgment providing, in addition to other matters, that the parties would share joint custody of C.G., with Rhonda designated as domiciliary parent and with Darrin granted visitation every Wednesday evening and every other weekend from 6:00 p.m. on Friday through 5:00 p.m. on Sunday.
On November 16, 2017, Darrin filed a "Rule for Ex Parte Order, Rule to Change Custody, and Modify Child Support," contending a material change of circumstances occurred and that sole custody in his favor would be in C.G.'s best interest. In his rule, Darrin alleged that Rhonda's live-in boyfriend, Cody Kinler, was a known drug dealer recently arrested for drug possession. He also alleged his belief that Rhonda may be using illicit drugs and that she had been recently fired from her job for failing a drug screening test. The rule further alleged that C.G. was struggling in school and had been recently suspended.
On November 21, 2017, Darrin filed a petition for protection from abuse on behalf of C.G., alleging that a police search of Rhonda's residence revealed drug paraphernalia in the home and resulted in the involvement of child services. He further asserted that he feared Rhonda was under *711 the influence of drugs while in C.G.'s presence. He stated that he did not want his son exposed to police activity and did not think Rhonda could handle C.G. while under the influence of drugs. The trial court denied the TRO and set the matter for hearing for December 4, 2017.
On November 27, 2017, Darrin filed a second rule for ex parte temporary sole custody alleging that Rhonda recently bailed her boyfriend, Cody Kinler, out of jail following his arrest on drug-related charges and allowed him to move back into the residence with C.G. Darrin further alleged that Rhonda abuses pills while in C.G.'s presence and associates with friends who are drug abusers and dealers while in the child's presence. Attached to his second rule for ex parte temporary sole custody, Darrin also attached the affidavit of Brad Alexander.
Mr. Alexander attested that he dated Rhonda for 2.5 years and has been living with Rhonda "on and off" for 1.5 years. He attested that he attended Thanksgiving dinner at Rhonda's home on November 23, 2017, and observed Rhonda take multiple Oxycodone pills throughout the day and observed Rhonda's sister and her boyfriend "snorting drugs" while C.G. was present in the home. Mr. Alexander further attested that Rhonda has allowed her sister and her sister's boyfriend, who are known drug users, to live in the home and that C.G. has been "kicked out" of his room and forced to sleep on the couch since June, 2017.
Mr. Alexander further attested that he has observed Rhonda buy and use oxycodone, Xanax, xanbar, seboxone, and use methamphetamines in the home. He further asserted that Rhonda has sold C.G.'s prescribed ADHD medication, rather than administering it to him, and that "crystal meth and heroin" have been sold out of the home. He further alleged that Rhonda does not make the minor child bathe or brush his teeth regularly and has made threats of physical violence against Darrin and his wife if they were to interfere with her custody of C.G.
The trial court again denied the ex parte order but set the matter for hearing for December 4, 2017. On that date, the parties and court executed a stipulated consent form, wherein the parties agreed to share joint custody of C.G., with Darrin designated as the domiciliary parent and with Rhonda exercising visitation every other weekend. The stipulation stated it was without prejudice to either party pending a hearing on Darrin's rule to modify custody.[1]
On March 21, 2018, the parties entered into a Consent Judgment. The Consent Judgment awarded the parties joint custody of the minor child with Darrin designated as the domiciliary parent and with Rhonda exercising visitation every other weekend from Friday at 6:00 p.m. to Sunday at 6:00 p.m. It further provided that Rhonda would submit to a 9-panel hair follicle test and a urine screening test by the 5th day of each month for six consecutive months and that she would provide a copy of the drug testing results to Darrin through his counsel.[2]
Subsequently, Rhonda and Darrin each filed motions to modify custody. In his motion, Darrin sought sole custody of C.G. Darrin contended that Rhonda still abused drugs and failed to prove that she was not *712 dependent on drugs through negative drug screening reports, as required in the parties' March 21, 2018 Consent Judgment. In her rule to modify custody, Rhonda alleged that she was no longer drug dependent and sought additional physical custody of C.G.
The matter proceeded to trial on August 9, 2018. Amy Laiche, the assistant principal of Lutcher High School where C.G. attends high school and the former assistant principal at Paulina Elementary School, where C.G. attended Elementary School, testified at trial. Ms. Laiche has known C.G. in some capacity since pre-kindergarten and interacts with him daily.
Ms. Laiche testified that C.G. is in need of a 504 plan, has had a 504 plan for approximately two years, and absolutely needs structure in his life. Although Ms. Laiche testified concerning C.G.'s 504 plan and academic and behavioral needs, she did not discuss the medical or behavioral reason for C.G.'s 504 plan nor his medical diagnosis.[3] She stated that when she has a concern regarding C.G.'s academics or behavior, Darrin is the parent who comes to the school to meet with her to discuss the child's 504 plan. She testified to one occasion when she invited Rhonda to attend a meeting, but that she has not seen Rhonda at a meeting during the current school year. She specifically testified to one occasion when she left messages for Rhonda and sent a letter home through C.G. and could not reach Rhonda.[4] Ms. Laiche acknowledged there is a notation in the school's records that in mid-December 2017, shortly after he began spending significantly less time with his mother, C.G. was hospitalized because he threatened to harm or kill himself. However, Ms. Laiche ultimately concluded that during the period of time in which Darrin had more frequent physical custody of C.G., she noticed a positive change and a "huge difference in both his behavior and his academics."[5]
Sergeant Troy Johnson, Dean of Students at Lutcher High School, testified that he has known C.G. for approximately one year. Sgt. Johnson testified that C.G. needs tough leadership and discipline, stating that "[i]f you give him too much rope, he's a follower...he's not a bad kid, but he needs strong leadership." Sgt. Johnson admitted that the school's policy with male students is to call the father first, stating "I never really called mom....that's what we do a lot of the times with the boys. We call the father because you seem to get that result and so that's what I did." Sgt. Johnson described Darrin as "a stern man. So I know that's tough sometimes on young men." Sgt. Johnson testified that he noticed an improvement behaviorally after Darrin became more involved and had more physical custody of C.G. Sgt. Johnson acknowledged that C.G. "cares deeply" for his mother but that he overall saw improvement in C.G.'s behavioral and academic performance when in his father's custody.
*713 Denise Ryland, Rhonda's second cousin, testified at trial that she lives blocks away from Rhonda and has also known Darrin for 25-30 years. She testified that she has cared for C.G. in some capacity since he was 5 years old when she watched him over an entire summer. Ms. Ryland testified that C.G. has been diagnosed with Asperger's and can be a difficult child who does not like change and struggles in social situations. She testified that after his parent's divorce, C.G. became very angry and would visit with her at her house to vent about the divorce and to play with Ms. Ryland's daughter who is close in age to C.G. She testified that she is close with C.G. and she is there to act as an independent third-party for C.G. to communicate with about all aspects of his life.
Ms. Ryland came to Rhonda's house when Child Protective Services was called to the home following the drug activity in November 2017. She has talked with C.G. about it and more recently about his current living and custody situation. She testified that C.G. does not want to stay at his father's house because he is frightened of his father. Ms. Ryland explained that because of C.G.'s Asperger's diagnosis, he needs to be handled a little differently than other children and he is frightened of his father's loud voice and discipline. C.G. has recently expressed to her his desire to spend more time with his mother.
Ms. Ryland testified that in the six months prior to trial, she has been to Rhonda's house three or four times each month. She allows her child to go to Rhonda's home and has never felt like her child was in danger or unsafe when at Rhonda's home. She testified that she knows about the prior drug activity but that "it would be a surprise" if Rhonda tested positive for drugs since the November incident.
Darrin testified that when he and Rhonda initially separated in the summer of 2016, he had physical custody of C.G. every other weekend. He testified that he learned that sometime in 2016, Rhonda withdrew C.G. from his elementary school without his knowledge and enrolled C.G. in a virtual academy, where all work is done from home on a laptop. He further testified that he later learned that Rhonda was doing C.G.'s homework and/or hiring her niece, Lexi, to do the work for C.G. The summer after 6th grade, after Darrin learned that C.G. was in danger of failing 6th grade, Darrin asked for more time with C.G. to work on his discipline issues, which he believed would then lead to improved academics as well. During that summer of 2017, the parties switched to a week to week custody arrangement without court interference or involvement.
Darrin admitted that he does not communicate well with Rhonda, including not providing her with information pertaining to doctors' appointments or school activities. He further admitted that he did not initially inform Rhonda when C.G. was brought to the emergency room for psychiatric evaluation on one occasion and committed to River Oaks Hospital for psychiatric care.[6] Darrin agreed that prior to Rhonda's drug issue, the parties did co-parent fairly well, but that he will not tolerate any drug use. He further acknowledged that, close in time to trial, Rhonda asked to spend more time with C.G., which he denied.
Darrin testified that he had no idea Rhonda was involved in any kind of drug activity until November 15, 2017. He first *714 learned from neighbors and his church community that Rhonda was hanging out with "trash" and involved in drugs. He testified that he has driven by her home and can see the "unreputable" traffic and people coming in and out of her home. Darrin testified that he does not sleep well when his son is with his mother during every other weekend visitation because he is concerned for his safety and well-being. Darrin testified that as long as Rhonda is hanging out with the same "unreputable" people who are known drug users, she "has the potential of, at any time, falling off of that edge and getting right back where she was." Darrin asked the court to order that any time C.G. spends with Rhonda at this time should be supervised.
Since Darrin has had more physical custody of C.G., he is involved in extracurricular activities: fishing, hunting, and "livestock" shows, where he is "showing three pigs this year." Darrin bought C.G. a lawnmower at age 13 and has allowed him to cut family members' lawns for money. Darrin testified that he has set up a bank account for C.G. and he holds a percentage of the money C.G. makes cutting grass and doing other chores to save in an account for C.G.
Rhonda testified that her divorce from Darrin was very difficult for C.G. and that he has been in therapy since the parties separated in 2015. She testified that C.G. has Asperger's and is a highly intelligent child. She further testified that she lives by herself with her 3 dogs but that her 14-year-old niece stays at her home on occasion. When questioned concerning male visitors, Rhonda testified that a man named Cody Kindler slept at her home twice when her son was not present and that Brad Alexander, with whom she was in a relationship, slept at her house every other weekend for approximately 2 years when her son was not in the home.
Rhonda testified that she relocated C.G. from Paulina Elementary to the virtual academy in 2016, after recommendation from Paulina Elementary. She indicated the virtual academy had smaller class sizes and more one on one attention for her child.[7] She acknowledged that she did not tell Darrin that she moved the child from school until after it was done. She testified that Darrin does not inform her of anything going on in C.G.'s life and that Lutcher High School has refused to give her any information because she is not listed as an emergency contact on C.G.'s school paperwork. Rhonda further denied that anyone from Lutcher High, including Ms. Laiche, ever contacted her in the most recent school year or left a message to inform her of any meetings for any academic or behavioral issues.
Concerning drug use, Rhonda admitted that she experimented with meth in 2017. She testified that she used drugs with Cody Kindler in her home but that since December 2017, she has been in both outpatient and inpatient treatment centers and receives psychiatric care every 6 weeks. She contended that she has taken only one oxycodone without a prescription and regularly takes Xanax, which she is prescribed. She testified that she has not ingested methampetamines or oxycodone since November 15, 2017.
At trial, Rhonda introduced into evidence the hair follicle and urine drug *715 screening test results for three different dates. A December 5, 2017 report reflects that Rhonda tested positive for various substances, including Amphetamines, Methamphetamines, Oxycodone and Barbiturates.[8] The April 17, 2018 hair follicle drug screening report reflects that Rhonda tested positive for Amphetamines, Methamphetamines, Barbituates, and Butalbital. One negative drug screening report, dated June 25, 2018, was also introduced into evidence.[9] Rhonda claims that she also took urine tests in the months of April and May, which she testified were both negative, but those reports were not introduced into evidence nor presented to opposing counsel prior to trial.
On September 17, 2018, the trial court issued a judgment granting the parties joint custody, with Darrin as the designated domiciliary parent and with Rhonda executing visitation every other weekend from 9:00 a.m. on Saturday to 5:00 p.m. on Sunday. The trial judge ordered that Rhonda's visitation every other weekend be supervised by Denise Ryland. The trial court further ordered the matter "set for review" for a hearing on November 5, 2018.
DISCUSSION
On appeal, Rhonda contends that the trial court erred in modifying the consent judgment between the parties and in granting her only supervised visitation with C.G.
It is well settled that the paramount consideration in any determination of child custody is the best interest of the child. E. R. v. T. S. , 18-286 (La. App. 5 Cir. 10/11/18), 256 So.3d 551, 557, writ denied , 18-1843 (La. 2/18/19), 264 So.3d 451 ; see also Tracie F. v. Francisco D. , 15-1812 (La. 3/15/16), 188 So.3d 231, 238-39. This applies not only in actions setting custody initially, but also in actions to change custody. Tracie F. , 188 So.3d at 239.
Where a prior custody decree is a stipulated judgment, the party seeking to modify the existing custody arrangement must prove: 1) there has been a material change in circumstances affecting the welfare of the child since the original custody decree was entered; and 2) that the proposed modification is in the best interest of the child. Theriot v. Theriot , 15-311 (La. App. 5 Cir. 10/14/15), 177 So.3d 759, 762 (quotations omitted); Evans v. Lungrin, 97-541 (La. 2/6/98), 708 So.2d 731, 738 ; Shaffer v. Shaffer, 00-1251 (La. App. 1 Cir. 9/13/00), 808 So.2d 354, 357, writ denied, 00-2838 (La. 11/13/00), 774 So.2d 151. The trial court has vast discretion in custody determinations. When considering the safety and best interest of the child, ordering supervised visitation is within the trial court's vast discretion. Coleman v. Coleman , 47,080 (La. App. 2 Cir. 2/29/12), 87 So.3d 246, 254.
In the present case, the prior custody decree was a stipulated judgment, wherein the parties consented to the custodial arrangement. Thus, in order to modify the prior custody arrangement, Darrin was required to show a material change in circumstances affecting C.G.'s well-being and that modification of the custody arrangement was in C.G.'s best interest.
Under the unique circumstances of this case-where Rhonda suffered with substance abuse issues and failed to comply with a consent judgment requiring her to undergo six, consecutive months of drug screenings, and where school administration *716 testified that C.G. had greatly improved under Darrin's care and structure-we find the trial court did not manifestly err in its determination that Darrin met his burden to prove a material change in circumstances. Further, given the positive evidence of prior drug abuse and Rhonda's failure to show consecutive months of negative drug screening reports, we find that the trial judge did not abuse his discretion in modifying Rhonda's visitation time with C.G. or in ordering that her visitation be supervised at this time and set for review. We further find that-because the ultimate goal of joint custody is "frequent and continuing contact" with each parent-there is nothing to prevent Rhonda from seeking to modify the custody arrangement or to lift the supervision restriction as she progresses through her rehabilitation and treatment and has shown consistent rehabilitation over a period of time. See La. R.S. 9:335.
Accordingly, for the reasons provided herein, the trial court judgment is affirmed.
AFFIRMED

The December 4, 2017 stipulation also provided that the parties would undergo hair follicle drug testing.

The March 21, 2018 consent judgment also terminated any prior child support judgment previously in effect and provided that no third parties could be present during the child's visitation with Rhonda.

The school records reflect that C.G. has an autism spectrum disorder. It is concerning to this Court that neither Darrin nor any of the school personnel who testified discussed C.G.'s medical diagnosis or what care and extra measures are taken, under Darrin's care, to ensure that C.G. is receiving the professional help he may need to thrive in light of his diagnosis.

Ms. Laiche testified that in December 2017, C.G.'s records indicated that Rhonda was no longer authorized to pick him up from school.

Ms. Laiche testified that C.J.'s academic grades improved during this period of time: from Quarter 1 to Quarter 4 of the school year, the child went from a 60F to an 86B in social studies; a 60F to an 88B in Science; a 60F to a 72D in Math; and a 63F to a 68D in English.

He testified that a parent meeting with the psychiatrist was scheduled at some point and that he notified Rhonda of that meeting, but that she did not attend. He acknowledged that Rhonda did attend two subsequent appointments during that hospital stay.

A recorded cell phone video taken during the time period C.J. was enrolled in the virtual academy was introduced into evidence. Darrin alleges the video shows Rhonda doing C.J.'s homework for him, thereby supporting or enabling the child's lazy habits. Rhonda testified that the video shows that she was learning C.G.'s assignments or class material to be able to help her son with homework. She also testified that she asked her 14-year-old niece to help C.G. with homework.

Rhonda also tested positive for Alprazolam, which she testified is Xanax, a prescribed medicine.

The June 25, 2018 report did reflect a positive result for Alprazolam, which Rhonda testified reflects her prescription for Xanax.