STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

ANDREW TAYLOR SMITH

VERSUS

ANGELICA HARMON

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20154206
HONORABLE DAVID BLANCHET, DISTRICT JUDGE

**********

**LEDRICKA J. THIERRY
JUDGE**

**********

Court composed of Gary J. Ortego, Ledricka J. Thierry, and Guy E. Bradberry, Judges.

**AFFIRMED.**

**Daniel M. Landry, III**
**Christian B. Landry**
**The Landry Law Firm**
**P.O. Box 3784**
**Lafayette, LA 70502**
**(337) 237-7135**
**COUNSEL FOR PLAINTIFF-APPELLANT:**
    **Angelica Harmon**

**Kay Karre Gautreaux**
**405 West Convent Street**
**Lafayette, LA 70501**
**(337) 232-7747**
**COUNSEL FOR INTERVENOR - APPELLEE:**
    **Tammy Lyons**

**Andrew Taylor Smith**
**Pro Se**
**2195 St. Julien Street**
**Lafayette, LA  70506**
**(337) 349-9891**

**THIERRY, Judge.**

The appellant, Angelica Harmon, appeals the judgment of the trial court which named Tammy Lyons, the paternal grandmother, the domiciliary parent of the minor child, A.L.S.[1] Ms. Harmon also asserts the trial court erred in not finding Ms. Lyons in contempt of court for an alleged violation of the Custody Implementation Plan. For the following reasons, we affirm the trial court's judgment in its entirety.

### FACTS AND PROCEDURAL HISTORY

On May 10, 2016, Angelica Harmon gave birth to A.L.S. The father of the child was Andrew Taylor Smith. Ms. Harmon and Mr. Smith have a tumultuous history involving numerous court orders and proceedings, even prior to the birth of the child.

In August of 2015, Mr. Smith filed a "Petition for Protection from Abuse" against Ms. Harmon, which was later dismissed on Mr. Smith's motion. On December 1, 2016, Mr. Smith filed another "Petition for Protection from Abuse" against Ms. Harmon, alleging she had slapped him and burned him with a curling iron. On December 13, 2016, Ms. Harmon filed a "Petition for Protection from Abuse" against Mr. Smith, claiming he attempted to strangle her on three occasions and nearly burned down their house by passing out drunk while leaving a pan full of grease on the stove. Ms. Harmon claimed after the last incident of strangling, she had a breakdown leading her to ingest a bottle of Xanax pills. An ambulance was called by Mr. Smith and Ms. Harmon was transported to Lafayette General Hospital for treatment. She then was brought to Vermilion Behavioral Center and diagnosed with major depressive disorder, generalized anxiety disorder, mild Xanax use

---

[1] We use the initials of the minor to protect her identity. Uniform Rules--Courts of Appeal, Rules 5-1, 5-2.

disorder and mild THC use disorder. After discharge she was instructed to seek follow-up care at Tyler Behavioral Health Clinic Center in Lafayette.

After a hearing on December 21, 2016, the trial court dismissed both petitions finding the parties failed to prove the allegations. Based on the testimony as to Mr. Smith's excessive drinking and Ms. Harmon's admission records from Vermilion Behavioral Center that she had ingested marijuana laced brownies and smoked marijuana, the trial court ordered that both parties undergo a drug screen and that Mr. Smith undergo an alcohol blood test. If the parties had a positive screen, they were to be assessed for substance abuse disorder. The trial court ordered temporary custody of the child to Ms. Harmon and Mr. Smith, who were to be supervised by Tammy Lyons, Mr. Smith's mother and the child's grandmother, or alternatively to be supervised by Avec Les Enfants Visitation Center.

Mr. Smith's drug screen results from January 3, 2017, tested positive for cocaine. His alcohol blood test revealed he was engaging in binge drinking on a regular basis. Ms. Harmon's hair and urine drug screens dated December 28, 2016, were negative, though she had acknowledged regular marijuana use upon her admission to Vermilion Behavioral Center. The trial court issued an "Order of Supervision and Setting Hearing" on January 12, 2017. The Order provided that Mr. Smith maintain temporary custody of the child under the supervision of Ms. Lyons. Ms. Harmon was granted supervised visitation at Avec Les Enfants Visitation Center.

On January 19, 2017, the parties entered into a "Consent Judgment" which provided temporary joint custody on a 3-2-2 pattern. Mr. Smith was to be supervised by Ms. Lyons and Ms. Harmon was to be supervised by her roommate, Elizabeth Aguilar.

2

On March 8, 2017, Ms. Lyons filed a "Petition to Intervene and Petition for Custody by a Non-Parent, Pursuant to [La.Civ.Code] Art. 133" against Mr. Smith and Ms. Harmon. In that filing, Ms. Lyons alleged she had been the primary caregiver for the child since November 28, 2016, noted the alleged abuse allegations made by the parties against each other, the drug and alcohol abuse, and that the parties do not have steady employment or housing and, thus, do not have sufficient resources to provide for the child.

A hearing was held on May 15, 2017, to address the recommendations made in the report by the family court's drug program provider, Clearstart. As to Ms. Harmon, Clearstart recommended that she follow through with her individual therapy and medication management at Tyler Behavioral. She was also to enter the family court's random drug screen monitoring program until she submitted a certificate of completion of therapy. The recommendation for Mr. Smith was for him to abstain from all non-prescribed mood-altering chemicals, including alcohol. It was also recommended that he complete an intensive outpatient program and follow all recommendations of that program.

At a hearing on May 18, 2017, the trial court appointed Dr. Lynn Aurich to conduct a full psychological assessment of Ms. Harmon and prepare a report for the court. The trial court set a review hearing on August 21, 2017, to determine the parties' progress on the recommendations made by Clearstart. A Judgment of Temporary Custody was made by the trial court maintaining temporary custody with Ms. Lyons and providing for supervised visitation for both Mr. Smith and Ms. Harmon.

On July 3, 2017, Mr. Smith again filed a "Petition for Protection from Abuse" against Ms. Harmon. That same day, Ms. Harmon filed a "Petition for Protection from Abuse" against Mr. Smith. On July 27, 2017, after a hearing, the trial court

denied both petitions for failure to prove their allegations. However, the trial court did issue a "Court Approved Consent Agreement" in favor of Mr. Smith restraining Ms. Harmon from following and contacting Mr. Smith.

At a hearing on August 21, 2017, the trial court reviewed the parties' progress in the monitoring program and their treatment. Ms. Smith was found to have positive screens for alcohol and his participation in the outpatient program at Tyler Behavioral was unverified. Ms. Harmon was found to have missed a drug screen and had a positive screen for alcohol. Her participation in mental health treatment at Tyler Behavioral was also unverified. The hearing was re-set to allow the parties to obtain records from Tyler Behavioral. Ms. Harmon was also granted supervised visitation once per week to be supervised by Leslie Mathes, a paid supervisor.

At the re-set hearing on September 18, 2017, the court noted Ms. Harmon was compliant with her mental health treatment at Tyler Behavioral, but she had missed two drug screens. The court found Mr. Smith's drug screens were negative, but his participation in the outpatient program at Tyler Behavioral was unverified. Mr. Smith was ordered to obtain his records and provide them to the trial court.

At a hearing on October 12, 2017, temporary custody of the child was maintained with Ms. Lyons. It was found Mr. Smith successfully completed the outpatient program. The trial court granted periods of unsupervised visitation to both parents, but maintained the order that neither party should utilize illegal substances or consume alcohol. Mr. Smith was ordered to continue in the monitoring program through Clearstart and Ms. Harmon was to continue treatment at Tyler Behavioral. Both parents were ordered to enroll in the Better Options ten-week course at Donna Aucoin & Associates to improve their parenting and communication.

On November 15, 2017, the trial court received a report from Clearstart with recommendations that Mr. Smith undergo an additional ninety days of monitoring due to positive drug screens for marijuana and alcohol. If Mr. Smith were found to have any positive screens during this period, Clearstart recommended he be reassessed for an intensive outpatient program. After a court hearing to discuss the recommendations, Mr. Smith signed an agreement to the recommendations.

On January 9, 2018, the trial court filed a "Rule for Contempt" against Ms. Harmon for her failure to meet her financial obligations to Clearstart for the monitoring program. The trial court did not find her in contempt, but ordered she resume the monitoring program and submit to a drug screen the following day.

On February 15, 2018, Ms. Lyons filed a "Rule for Contempt, Motion to Modify Order of Temporary Custody and Request for Immediate Custody and Request for Immediate Order for Supervised Visitation." The rule for contempt, temporary custody and supervised visitation was set for February 26, 2018. The rule for permanent custody was fixed for hearing during the week of July 2, 2018.

At the hearing on February 26, 2018, noting it had received a report from Clearstart that Mr. Smith had two positive drug screens for marijuana and alcohol, the trial court found Mr. Smith had not complied with the Clearstart recommendations. The trial court maintained Mr. Smith's visitation as supervised. The trial court also, on its own motion, filed a Rule for Contempt against Mr. Smith for the drug screens and failing to pay the monitoring fee to Clearstart. The trial court found Ms. Harmon's drug screen was positive for marijuana, ordered another drug test and stated Ms. Harmon's visitation was to be supervised at Avec Les Enfants Visitation Center pending a hearing on March 26, 2018. The trial court also ordered that Ms. Harmon provide all her records from Tyler Behavioral to the court's

drug program administrator. The trial court further ordered that Ms. Lyons maintain temporary custody of the child.

On March 16, 2018, Ms. Harmon also filed a "Motion to Lift Supervised Visitation." At a hearing on that motion, the trial court maintained the visitation as supervised and ordered Ms. Harmon to remain in monitoring with Clearstart until she finished her therapy at Tyler Behavioral.

At an April 16, 2018 hearing, the trial court warned Mr. Smith this was his last chance to complete the program and passed the Rule for Contempt against him without date. The trial court also agreed to advance $240.00 on behalf of Mr. Smith to cover his monitoring fees for three months. Mr. Smith agreed to take the additional recommendations made by Clearstart.

At a hearing on April 19, 2018, the trial court granted an Order of Protection in favor of Ms. Harmon and against Mr. Smith. The Order was to remain in effect for one year. Mr. Smith was also ordered to complete the Family Violence Intervention Program within eight months.

At a hearing on June 11, 2018, the trial court removed Mr. Smith from the court's drug program for non-compliance. The court found Ms. Harmon was compliant with Clearstart and lifted Ms. Harmon's supervised visitation and awarded her visitation from 8:00 a.m. to 5:00 p.m. every Sunday, Monday and Tuesday. Mr. Smith was granted supervised visitation at Avec Les Enfants Visitation Center. The trial court also appointed Dr. Amy Cavanaugh to conduct an evaluation of the minor child.

On June 15, 2018, Ms. Harmon filed a "Motion to Dissolve" the Protective Order claiming Mr. Smith admitted to his mistakes, was maintaining sobriety, and agreed to go to therapy and anger classes. The motion also asserted that Ms. Harmon wanted to reconcile, co-parent and seek therapy with Mr. Smith in an attempt to

6

become a family. A hearing on the motion was set, at which neither Ms. Harmon nor Mr. Smith appeared. Thus, the Order of Protection remained in effect.

The parties returned to court on August 27, 2018, on all pending issues including custody. The parties entered into a stipulation that granted sole custody of the minor child to Ms. Lyons. Mr. Smith was ordered to undertake a drug screen and be re-evaluated by Clearstart. His visitation was continued at Avec Les Enfants Visitation Center. Ms. Harmon's unsupervised visitation was continued; but conditioned on her ongoing participation in counseling with Dr. Micheal Berard. Ms. Lyons and Ms. Harmon were instructed to exchange the minor child at the Lafayette Police Station "Safe Exchange" location.

On October 8, 2018, Ms. Lyons filed an "Ex Parte Motion and Order to Suspend Unsupervised Visitation" against Ms. Harmon alleging she was under investigation by the Department of Family and Child Services (DFCS) for a third-party report of child abuse against her child (A.L.S.'s older half-sister) from a prior relationship.

A hearing was held on October 8, 2018, to review Mr. Smith's recent drug screens and Ms. Harmon's participation in the monitoring program. Mr. Smith's drug screens from September 21, 2018, were positive for cocaine but negative for alcohol consumption. The trial court ordered Mr. Smith to seek either in-patient treatment or enter into the Intensive Outpatient Program at Tyler Behavioral. The trial court stated in order for him to have any unsupervised contact with the minor child, Mr. Smith would have to prove to the court one year of sobriety. It was noted that Mr. Smith completed the Best Dads course at the Family Tree. It was found Ms. Harmon was compliant with the monitoring program and the court set a review hearing for November 29, 2018. The trial court set a chamber conference on Ms. Lyons' petition for ex parte custody for October 12, 2018.

7

The trial court met with both counsel in chambers on October 12, 2018. A conference call was held with Dr. Cavanaugh, the minor child's therapist. As a result of the conference, the trial court suspended Ms. Harmon's visitation, pending the appointment of a qualified supervisor approved by the court. The trial court also ordered that Ms. Harmon and the minor child schedule an appointment with Dr. Cavanaugh. Ms. Harmon was also ordered to provide her psychologist, Dr. Berard, with copies of her mental health records and he was to perform a complete psychological evaluation.

On December 1, 2018, the trial court received notice that Ms. Harmon successfully completed the family court monitoring program through Clearstart. At a hearing on December 12, 2018, the trial court restored Ms. Harmon's visitation to unsupervised. The trial court also found that DFCS invalidated the child abuse claim as to Ms. Harmon's other daughter. The trial court determined that Ms. Harmon engaged in inappropriate discipline by using a spatula to spank her older child on one occasion.

On May 13, 2019, Ms. Lyons filed a "Rule to Establish Child Support, Rule for Modification of Visitation, and Imposition of Custody Implementation Plan" against Mr. Smith and Ms. Harmon. Ms. Lyons sought child support from both Mr. Smith and Ms. Harmon. She also sought to modify the visitation schedule, alleging circumstances had changed which materially affected the welfare of the minor child. Specifically, Ms. Lyons alleged Ms. Harmon had been engaging in behavior designed to alienate the child's love and affection for her and her husband. She also stated the child had difficulty sleeping alone due to statements made to her by Ms. Harmon. Ms. Lyons also asserted Ms. Harmon had disrespected her in the presence of the child at exchanges, some of which were videotaped. She also alleged Ms.

Harmon and Mr. Smith have resumed a relationship which effectively allows Mr. Smith to have visitation with the child in direct violation of the orders of the court.

Ms. Harmon answered the above rules and responded that it was in the best interest of the minor child that she be awarded shared custody or, at a minimum, be awarded additional custodial periods that included overnight visitation.

On September 10, 2019, Ms. Lyons filed a "Rule for Contempt for Willful Failure to Pay Child Support, and Contempt for Violation of Court Orders." It was alleged Mr. Smith refused to pay any child support, and Ms. Harmon did not pay child support for the months of August and September of 2019. Ms. Lyons also alleged Ms. Harmon made false reports to Lafayette Parish Police that Ms. Lyons was trying to poison the minor child and sent police to her home on multiple occasions. Ms. Lyons sought that Ms. Harmon be held in contempt of court and her visitation be supervised.

The contempt and child custody rules came before the trial court on October 22, 2019. The parties entered into a stipulation to resolve all issues pending before the court as contained in a "Consent Judgment on Child Custody" signed by the court on November 19, 2019. The "Consent Judgment" maintained sole custody with Ms. Lyons. Mr. Smith's visitation was to remain at Avec Les Enfants Visitation Center. Ms. Harmon was granted visitation every Friday from 10:00 a.m. to 6:00 p.m. and every other Saturday and Sunday from 10:00 a.m. to 6:00 p.m. Ms. Harmon was also ordered to participate in parent/child counseling with a counselor recommended or approved by Dr. Cavanaugh, the records of which were to be reviewed by Dr. Cavanaugh. The issues of child support and/or contempt of court were deferred to a later date, with the temporary judgment on child support extended.

On July 15, 2020, Ms. Harmon filed a "Rule to Change Custody" against Ms. Lyons and Mr. Smith. She alleged there had been a substantial change in

circumstances since the prior custody decree was issued. Ms. Harmon noted her evaluation and participation in individual counseling at Tyler Behavioral and also with Dr. Berard. She also cited her completion of the Clearstart monitoring program, her completion of the Best Mom's Program at the Family Tree and her participation and clinical interview and evaluation for the purpose of parent/child attachment with Donna Aucoin. Lastly, she maintained she was able to provide a loving, stable and healthy home environment and attend fully to the needs of the minor child.

The child custody issues, rules for contempt and child support filed by Ms. Lyons against Mr. Smith and Ms. Harmon came for hearing on April 28, 2021. Despite being personally served, Mr. Smith failed to appear at the hearing. The trial court found Ms. Harmon sustained her burden of proving a material change in circumstances occurred since the signing of the "Consent Judgment on Child Custody" on September 27, 2018. The trial court noted her successful completion of the Clearstart monitoring program and the Best Mom's Program. It noted her full psychological evaluation by Dr. Berard and her thirty-eight counseling sessions with him. The court found Ms. Harmon's bonding and attachment with the minor child was positively assessed by Donna Aucoin. Lastly, the trial court noted that Ms. Harmon had remarried and her living conditions and financial situation were stable and improved.

The trial court then examined the factual findings in the light of the best interest of the child, to determine what the appropriate custodial situation should be. The court found Ms. Harmon's visitation should be expanded and issued a "Temporary Judgment" providing her visitation on alternating weekends, alternating Tuesdays and Thursdays. The judgment required that Ms. Lyons and Ms. Harmon notify each other if the child would be taken out of town overnight from Lafayette and provide a contact number and address where the child would be staying. Ms.

10

Lyons and Ms. Harmon were to alternate taking the minor child to her appointments with Dr. Cavanaugh and each to be responsible for payment on those visits. The trial court ordered that neither party was to attempt to estrange the child from the mutual love and affection the child has for the other parties. The parties were also not to discuss any pending or past litigation with the child.

On June 23, 2021, the trial court issued a "Judgment and Joint Custody Plan" which removed Ms. Lyons as sole custodian of the minor child and awarded her and Ms. Harmon joint custody without naming a domiciliary parent. The judgment also expanded Ms. Harmon's visitation during the summer of 2021 to coincide with her schedule. Commencing with the 2021-2022 school year and thereafter, Ms. Lyons and Ms. Harmon were to share custody on an alternating seven-day basis with the exchange day being on Fridays after school. Mr. Smith was ordered to remain supervised at Avec Les Enfants Visitation Center, conditioned on him completing the Family Violence Program and a substance use disorder program.

Ms. Harmon appealed the trial court's judgment, asserting it erred in declaring Ms. Lyons and Ms. Harmon as joint custodial parents and further erred in not designating the natural mother as the domiciliary parent of the minor child versus a non-parent. This court affirmed, finding although there is a preference for the appointment of a domiciliary parent in La.R.S. 9:335, the statute recognizes that a trial court can opt not to designate a domiciliary parent. *Smith v. Harmon*, 21-772, 21-773 (La.App. 3 Cir. 4/6/22), 337 So.3d 912, *writ denied*, 22-723 (La. 6/8/22), 338 So.3d 1198. When the trial court opts not to assign a domiciliary parent, one of the two exceptions contained in La.R.S. 9:335 must exist. Either a valid implementation order to the contrary must exist or other good cause must be shown. In this case there was a joint custody plan that corresponds with the judgment awarding joint custody, which specifically states that no domiciliary parent or

11

custodian is being named. This court found that the joint custody plan constitutes a valid implementation order since it provides for the allocation of specific time periods during which each party has physical custody of the child, includes a provision concerning evacuation because of an emergency or declared disaster, and allocates the legal authority of the parties as required by La.R.S.9:335. Therefore, this court found no error with respect to the trial court's failure to designate either Ms. Harmon or Ms. Lyons as domiciliary parent. A writ application to the Louisiana Supreme Court was denied.

Shortly after school began for the 2021-2022 school year, Ms. Lyons stated she began noticing changes in A.L.S. When she returned from visits with Ms. Harmon, she appeared very tired, mentioned playing with her dog in Baton Rouge, and going to locations in Baton Rouge. Ms. Lyons believed this indicated A.L.S. was being taken to Baton Rouge during the school week in violation of the custody implementation plan. Ms. Lyons hired a private investigator who confirmed that Ms. Harmon was commuting from Baton Rouge to Lafayette during the week. The investigator also discovered that Ms. Harmon regularly was speeding on I-10 in excess of 100 m.p.h. with A.L.S. in the car. Ms. Lyons stated on one occasion A.L.S. began crying to her that she didn't want to go to her mother's house because she was scared of how her mother drove and would say bad words.

Based on the above information, on November 2, 2021, Ms. Lyons filed an "Ex Parte Motion and Order to Suspend Visitation, Rule for Contempt, and Motion for Expedited Hearing Based on Immediate Danger." An expedited hearing was held on December 2, 2021. Despite finding that its court orders were violated, the trial court maintained joint custody. However, because it found Ms. Harmon was no longer residing in Lafayette, the court modified the custodial schedule to every other weekend and one evening on the off week in Lafayette. The trial court stated:

I believe my court order was violated. I believe that this child was brought up and down the interstate at excessive speeds. I will maintain the suspension of the visitation on school nights . . . I am not taking her visitation away. I'm suspending her visitation so she doesn't continue this ruse of supposedly living in Lafayette and putting this kid on the interstate in the early morning hours, in the fog, driving like a bat out of hell. . . . That's my court order.

On December 2, 2021, Ms. Lyons filed a "Rule for Modification of Child Custody and/or Modify Custody Implementation Plan" requesting sole custody or to be named domiciliary parent. On July 28, 2022, Ms. Harmon filed a "Rule to Modify Custodial Periods" and a "Rule for Contempt for Violation of Custody Plan" against Lyons. The Rules were heard on August 17, 2022. After hearing testimony and argument of counsel, the court made the following finding:

I already made a finding . . . that they weren't really living here, the child was being brought back and forth between Baton Rouge and Lafayette to go to school, which is unsustainable and completely in violation of my court order. . . . So it leads this Court to believe that Ms. Harmon never had an intent to follow the Court's order, but instead to do what she wanted to do.

It's unsustainable to have this child shared by people in two cities . . . it makes it impossible to try to operate this with people living in two different towns.

The trial court then noted that this was a high conflict case and stated that the supreme court in *Griffith v. Latiolais*, 10-754 (La. 10/19/10), 48 So.3d 1058, "says that in high conflict case I shall appoint a domiciliary parent." The trial court noted it was its hope that in this case the conflicts would abate and become non-existent, but that simply was not the case herein, thus the court named Ms. Lyons as the domiciliary parent. The trial court also denied Harmon's Rule for Contempt for Violation of Custody Plan. A judgment incorporating these findings was signed on September 26, 2022. This appeal followed, wherein Ms. Harmon asserts the following assignments of error:

1. The district court erred in naming a non-biological parent as the domiciliary parent and further erred in not designating the natural mother as the domiciliary parent or alternatively not designating a domiciliary parent.

2. The district court erred in not finding Ms. Lyons in contempt of court for violation of the Custody Implementation Plan concerning communication and health care issues of the minor child.

**ANALYSIS**

It is well established in every instance relating to the custody of a child, the trial court's factual findings will not be disturbed in the absence of manifest error. *Guidry v. Guidry*, 07-1272 (La.App. 3 Cir. 3/5/08), 979 So.2d 603. "The trial court is in a superior position to assess witness credibility and the best interests of the child after considering all of the testimony and evidence. Accordingly, we will not disturb a custody award unless an abuse of discretion is clearly shown." *Joubert v. Joubert*, 19-187, p. 6 (La. App. 3 Cir. 10/9/19), 283 So.3d 502, 505

Harmon argues since the trial court found her to be fit and able and it was in the best interest of the child that she be awarded joint custody, her rights are superior to those of a non-parent and it was error for her not to be named the domiciliary parent if one was named. Harmon cites the superior right parents have over non-parents in custody matters as support that the trial court erred in this case.

Custody contests involving a parent and non-parent present the confluence of two powerful and basic principles: the child's substantive right to live in a custodial arrangement which will serve the child's best interest and a parent's constitutional right to parent his or her biological child. *In re C.A.C.*, 17-108 (La.App. 4 Cir. 11/2/17), 231 So.3d 58; *Ferrand v. Ferrand*, 16-7 (La.App. 5 Cir. 8/31/16), 221 So.3d 909, *writ denied*, 16-1903 (La. 12/16/16), 211 So.3d 1164. The interest of a parent in having a relationship with his or her children is manifestly a liberty interest protected by the Fourteenth Amendment's due process guarantee. *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054 (2000). "The United States Supreme Court has declared it 'plain beyond the need for multiple citation' that a biological parent's

right to 'the companionship, care, custody, and management' of his children is a liberty interest far more important than any property right. *Tracie F. v. Francisco D.*, 15-1812 (La. 3/15/16), 188 So.3d 231, 234." *Ferrand*, 221 So.3d at 919. However, that liberty interest of a parent to the companionship, care, custody, and management of her children is not absolute. *Lassiter v. Dep't of Soc. Servs. of Durham Cty., N.C.*, 452 U.S. 18, 101 S.Ct. 2153 (1981). "[A]s the United States Supreme Court has repeatedly stated, a parent's constitutional right to parent his child does not arise by the mere circumstance of his child's birth. Rather, his liberty interest to parent his child arises with his demonstration of a full commitment to the responsibilities of parenthood by coming forward to participate in rearing his child. *Troxel*, supra, at 197, 120 S.Ct. 2054." *Kinnett v. Kinnett*, 17-625, p. 14 (La.App. 5 Cir. 12/28/22), 355 So.3d 181, 196. The right of avowal is not absolute; it is the relationship with the child that is determinative, not mere biological connection. *W.R.M. v. H.C.V.*, 06-702 (La. 3/9/07), 951 So.2d 172, 180. Each child custody case must be viewed in light of its own particular set of facts and circumstances, and courts must consider the "overarching and overriding concern for the best interest of the child as well as the parent's concomitant rights and responsibilities." *Tracie F. v. Francisco D.*, 15-224, p. 23 (La. App. 5 Cir. 9/21/15), 174 So.3d 781, 796, *affirmed*, 15-1812 (La. 3/15/16), 188 So.3d 231.

It must first be noted that there was no change to the joint custody determination earlier made by the trial court; both Ms. Lyons and Ms. Harmon maintain joint custody of A.L.S. We also find no reasonable basis for Ms. Harmon's argument that she should be named domiciliary parent. The district court noted Ms. Harmon has intentionally and surreptitiously violated its order that she and the minor child reside in Lafayette and has often not acted in the best interest of the child. We find the question in this case is whether the trial court manifestly erred in naming

15

Ms. Lyons, a non-parent, as the domiciliary parent under the particular facts of this case.

In reviewing the trial court's oral reasons for judgment, it specifically stated that the court in *Griffith*, 48 So.3d 1058, "says that in high conflict cases I shall appoint a domiciliary parent." A reading of *Griffith*, 48 So.3d at 1072, reveals the court therein did not specifically reference "high conflict" cases, but instead stated "given that the trial court's award of joint custody has been reinstated, the domiciliary parent issue must be addressed. . . . We find that at this stage of the case, five years after this custody suit was filed, a domiciliary parent should be designated." Similarly, the trial court in this case, acknowledging the lengthy and contentious history of this case, and the finding that it "[saw] no less conflict than there was last time we were here", felt compelled to name a domiciliary parent. We find the trial court did not abuse its discretion under La.R.S. 9:335 in finding that it was in the best interest of the child to name a domiciliary parent.

There is little doubt that the trial court, in this matter, gave significant consideration to the liberty interest of Ms. Harmon to the companionship, care, custody and management of her child. The court noted it could not recall "a case that I've had more courtroom time with than this case, through all the Clearstart hearings, all of the hearings on custody." It went on to expound on the effort that was made to transition the child from Ms. Lyons to a family unit with Ms. Harmon:

> So what the Court put in place was a means of transitioning this child from the grandmother to a family unit with the mother, her husband, and the child's sister. Both Ms. Harmon and Mr. Perez (Ms. Harmon's husband) testified to me in court, "No problem. We'll stay in Lafayette if that's what we need to do."

The court then went on to find that Ms. Harmon did stay in Lafayette for one year, but when her older child transitioned to a different school, Ms. Harmon and Mr. Perez, without informing the court, moved to Baton Rouge. Evidence was presented

to the court that A.L.S. began showing signs of exhaustion due to Ms. Harmon having her commute from Baton Rouge to Lafayette for school during the weeks she had custody, which interfered with her ability to function at school. The court also found the evidence established Ms. Harmon was traveling on the interstate between her home in Baton Rouge and the child's school in Lafayette at speeds in excess of 100 miles per hour, thus placing the child in extreme danger. The court concluded, with her history of personal problems, self-destructive behavior and her inability to work for the betterment of her child to foster a civil relationship with her child's grandmother, that it was in the best interest of A.L.S. that Ms. Lyons be named the domiciliary parent. The court stated:

> So where the Court hope[d] that the acrimony would abate, that the tensions would drop, that the communication between the adults would improve, more distrust was fostered by the fact that Ms. Harmon did not do what she told this Court she would do. . . . Well, my court order wasn't followed the first time. Why in the world would I believe she would follow it now? She had the perfect transition; she chose not to take it. Again, she wants to do it her way. The Court was pulling for her; I have always pulled for her. I thought that the plan I gave, I'm stunned Ms. Lyons did not appeal. I went as far as I thought I could go without her appealing, to try and give Ms. Harmon the ability to get into her child's life and be a meaningful part and, hopefully, eventually, transfer this child over to her. That's what the Court wanted to do. She didn't do it.

The trial court heard the evidence presented and made factual determinations that it was in the best interest of A.L.S. to name Ms. Lyons as the domiciliary parent. Ms. Lyons has been the primary caretaker of A.L.S. throughout her life and the court noted Ms. Lyons has provided the only stability in the minor child's life. The trial court also noted Ms. Harmon's inability to commit to the best interest of A.L.S. despite the myriad of opportunities the court provided to her. As to A.L.S., Ms. Harmon has unquestionably failed to exhibit a full commitment to the responsibilities of parenthood.

The Louisiana Supreme Court in *Hodges v. Hodges*, 15-585, pp. 2-3 (La. 11/23/15), 181 So.3d 700, 702, reaffirmed the primacy of the best interest of the child in making custody determinations:

> The best interest of the child is the sole criterion to be met in making a custody award, as the trial court sits as a sort of fiduciary on behalf of the child and must pursue actively that course of conduct which will be of the greatest benefit to the child. *C.M.J. v. L.M.C.*, 14-1119 (La.10/15/14), 156 So.3d 16, 28, *quoting Turner v. Turner*, 455 So.2d 1374, 1378 (La.1984). It is the child's emotional, physical, material and social well-being and health that are the court's very purpose in child custody cases; the court must protect the child from the real possibility that the parents are engaged in a bitter, vengeful, and highly emotional conflict. *Id*. The legislature has mandated that the court look only to the child's interests so that the court can fulfill its obligations to the child. *Id*. at 28-29.

Our review of the record leads us to conclude the trial court carefully weighed the evidence and found that the best interests of A.L.S. will be served by a joint custody agreement that names Ms. Lyons as the domiciliary parent. We find no manifest error in that finding.

In her second assignment of error, Ms. Harmon asserts the trial court failed to discuss the contempt allegations against Ms. Lyons. Specifically, Ms. Harmon had alleged A.L.S. had been exposed to Covid and Ms. Lyons failed to alert the other joint custodial parent of this fact timely. We note the judgment specifically stated the Rule for Contempt was denied, though the trial court did not specifically discuss that rule in his oral reasons.

Ms. Harmon maintains in brief that sufficient evidence was presented on this issue for a finding of contempt to be made. However, no citation to this evidence is provided in brief nor is any such sufficient evidence set forth in brief.

Ms. Lyons maintains she did inform Ms. Harmon that she had tested positive for Covid and that she and her husband had put precautions in place to quarantine the minor child as recommended by her physician. Nothing was presented by Ms.

18

Harmon to contradict this testimony. There also was no evidence in the record or any allegation that the minor child contracted Covid.

The burden is on Ms. Harmon, as the mover in this contempt proceeding, to prove her claim by a preponderance of the evidence. *Fobbs v. Fobbs*, 09-219 (La.App. 3 Cir. 11/10/09), 25 So.3d 168. When deciding whether to hold someone in contempt, the trial court is vested with great discretion. *McCorvey v. McCorvey*, 05-1173 (La.App. 3 Cir. 4/5/06), 926 So.2d 114, *writ denied*, 06-959 (La. 6/16/06), 929 So.2d 1290. Ms. Harmon has produced no evidence to find the trial court manifestly erred in finding she did not meet her burden of proof on this issue.

## DECREE

For the foregoing reasons, we affirm the trial court's designation of Tammy Lyons as domiciliary parent and the trial court's finding that Ms. Lyons was not in contempt of court for violation of the Custody Implementation Plan. All costs of this appeal are assessed to Angelica Harmon.

**AFFIRMED.**

19